**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**OLD DOMINION HOISTING SERVICE, Appellee.**

**INDEMNITY INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**KEMP-SMITH COMPANY, Appellee.**

Nos. 13897, 13898.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 14, 1957.

Decided Jan. 9, 1958.

Mr. Justin L. Edgerton, Washington, D. C., with whom Messrs. Charles E. Pledger, Jr., Randolph C. Richardson and John F. Mahoney, Jr., Washington, D. C., were on the brief, for appellant.

Miss Agnes A. Neill, Washington, D. C., with whom Mr. Edward Bennett Williams, Washington, D. C., was on the brief, for appellee in No. 13,897.

Mr. John P. Arness, Washington, D. C., with whom Mr. George D. Horning, Jr., Washington, D. C., was on the brief, for appellee in No. 13,898.

Before FAHY, WASHINGTON and BURGER, Circuit Judges.

PER CURIAM.

This is an appeal from a judgment declaring that appellant is obligated, under

the "loading and unloading" clause of its automobile liability policy, to defend a negligence action brought against appellees. The case was argued to the District Court on stipulated facts. The stipulation is as follows:

"Prior to August 24, 1954, defendant [appellant] issued a policy of automobile liability insurance in favor of the Park Transfer Company, a corporation engaged in the general trucking and hauling business in the District of Columbia, which policy was in full force and effect on August 24, 1954. In the course of such business, the Park Transfer Company has occasion to load and unload its vehicles, although in some instances these vehicles are loaded and unloaded by others.

"The Heron Todd Steel Construction Company, likewise a corporation doing business in the District of Columbia, was engaged in the construction of a bridge and underpass at or near the intersection of Benning Road and Kenilworth Avenue, N.E., in the District of Columbia on August 24, 1954. This bridge and underpass ran in a northerly and southerly direction under an existing overpass, which ran in an easterly and westerly direction. According to the specifications for the new structure, the bed of the bridge was to contain seven steel beams, laid parallel with one another and running in an easterly and westerly direction.

"Heron Todd hired two cranes to perform certain services in connection with this construction work. One crane was owned by plaintiff [appellee] Old Dominion Hoisting Service and operated by one Charles Robinson, an employee of plaintiff Old Dominion Hoisting Service. This crane had a sixty-foot boom. The other crane was owned by plaintiff [appellee] Kemp Smith Company and operated by one Ralph Rose, an employee of plaintiff Kemp Smith Company. This crane had a thirty-foot boom. Both plaintiffs are engaged in the business of renting cranes and crews in the District of Columbia.

"At all times material hereto, the Old Dominion crane was located immediately south of the existing overpass and immediately west of the new bridge and underpass. The Kemp Smith crane was located south of the new bridge and underpass.

"On the morning of August 24, 1954, a load of steel beams for the bed of the bridge was delivered to the construction site on a truck owned by the Park Transfer Company and operated by one Matthew Robinson, an employee of the Park Transfer Company. These beams were between sixty and seventy feet long and weighed approximately seven tons each. The Park Transfer truck was parked near the Old Dominion crane and south of it at all times material hereto.

"With the consent of the Park Transfer Company, the Old Dominion crane lifted the first beam from the Park Transfer truck by means of a steel cable. This cable had a loop or eye at each end. The cable was placed around the middle of the beam. One loop or eye was then passed through the other, forming a halter or noose around the beam. The free loop or eye was fastened to a large hook suspended from the boom of the crane.

"The Old Dominion crane picked up the beam in question from the Park Transfer truck and placed it upon the new structure roughly parallel with the existing overpass and somewhat north of the position which it was eventually to occupy. The beam remained in this location for approximately five minutes. During this interval the Old Dominion cable was moved to the east end of the beam, while a similar cable was placed around the west end of the beam and fastened to the Kemp Smith crane. This change was made because the supervisory personnel of Heron Todd believed that the Old Dominion crane could not continue to move the beam alone without coming into contact with certain wires suspended over the construction site.

"The two cranes then picked up the beam and commenced to move it in a

southerly direction. Several employees of Heron Todd, including one Charles Albert Wagner, were guiding the beam by hand. While plaintiffs' cranes were engaged in moving the beam toward the position which it was eventually to occupy in the new structure, but before the beam came to rest upon this structure, the boom of the Old Dominion crane came into contact with, or in close proximity to, a high tension wire owned and maintained by the Potomac Electric Power Company, resulting in the electrocution and death of said Charles Albert Wagner. This electrocution occurred at approximately 8:25 a. m. on August 24, 1954.

"The decedent's dependents elected to receive benefits under the District of Columbia Workmen's Compensation Act, 33 U.S.C.A. § 901 et seq., D.C.Code § 36–501 (1951 ed.) 33 U.S.C.A. § 901 note. Said benefits were paid by the National Surety Corp., a corporation duly licensed to engage and engaged in the insurance business in the District of Columbia, pursuant to a policy of insurance theretofore issued by it in favor of the Heron Todd Steel Construction Company.

"On March 8, 1955, the National Surety Corp., filed suit against Old Dominion and Kemp Smith, alleging the decedent's electrocution and death were caused by the negligence of Old Dominion and Kemp Smith and demanding damages therefor. Said suit is presently pending [in the District Court] and bears the following caption: National Surety Corporation v. Old Dominion Hoisting Service and Kemp Smith Company, Civil Action No. 1006–55. Old Dominion and Kemp Smith have both made due demand upon defendant herein to assume the defense of said suit on their behalf and to pay any resulting judgment rendered against them, or either of them, which demand has been refused."

In situations of this sort, two doctrines have competed for attention: the "complete operation" and the "coming to rest" doctrines. See Annotation, 1946, 160 A.L.R. 1259. The District Court concluded that under either doctrine the injury here occurred during the "unloading" of the Park Transfer truck, within the meaning of the policy. We agree.[1]

We add that this holding should not be understood to mean that appellant's policy necessarily provides the only coverage in this case. For example, should National Surety Corporation prevail in its suit against appellees, it may also be able to take advantage of such public liability policies as appellees may carry, though we do not decide the question. See Bituminous Casualty Corp. v. Travelers Insurance Co., D.C.Minn.1954, 122 F.Supp. 197; United States Fidelity & Guaranty Co. v. Church, D.C.N.D.Cal. 1952, 107 F.Supp. 683, affirmed sub nom. Canadian Indemnity Co. v. United States Fidelity & Guaranty Co., 9 Cir., 1954, 213 F.2d 658; Spurlock v. Boyce-Harvey Machinery, Inc., La.App.1956, 90 So.2d 417; Mohawk Valley Fuel Co. v. Home Indemnity Co., Sup.Ct.1957, 165 N.Y.S. 2d 357.

Affirmed.

1. This is not to suggest that the specific act engaged in when the event occurred might not be "unloading" and "construction" simultaneously.