**FEDERAL INSURANCE COMPANY**

v.

**MICHIGAN MUTUAL LIABILITY COMPANY, J. Robert Bazley, Inc., Lamar P. Conrad, and S. & E. McCormick, Inc.**

**NEWKIRK MINING COMPANY,**
Plaintiff,
New Franklin Coal Mining Co. Inc.,
Intervenor

v.

**MICHIGAN MUTUAL LIABILITY COMPANY.**

Civ. A. Nos. 24547, 25615.

United States District Court
E. D. Pennsylvania.

April 27, 1959.

Robert E. Jones, Philadelphia, Pa., for Federal Insurance Co. and J. Robert Bazley, Inc.

Norman Paul Harvey, and John J. McDevitt, 3rd, Philadelphia, Pa., for Mich. Mut. Liability Co.

Kimber E. Vought, Philadelphia, Pa., for Lamar P. Conrad.

Thomas E. Byrne, Jr., Philadelphia, Pa., for Newkirk Mining Company.

Leon H. Kline, Philadelphia, Pa., for New Franklin Coal Mining Co.

VAN DUSEN, District Judge.

■ The plaintiffs in these declaratory judgment actions and Lamar P. Conrad, as cross-claimant in Civil Action No. 24547, have filed Motions for Summary Judgment in order to secure a judicial determination that Policy No. 923761[1] of defendant Michigan Mutual Liability Company (hereinafter called "Michigan"), insuring S. & E. McCormick, Inc. (hereinafter called "McCormick"), constitutes the primary coverage in any action or actions for personal injuries or property damages arising out of an accident on October 2, 1956, brought, or to be brought, against J. Robert Bazley, Inc., Lamar P. Conrad, and Newkirk Mining Company, thereby requiring Michigan to defend such actions.[2] These two actions result from Civil Actions instituted by Alex Witcjak in this court against J. Robert Bazley, Inc. (hereinafter called "Bazley") (Witcjak v. Allen, D.C., 22 F.R.D. 330), Lamar P. Conrad (Civil Action No. 24667), and Newkirk Mining Company (hereinafter called "Newkirk"), et al. (Civil Action No. 24895), claiming damages for personal injuries allegedly resulting from the operation of a mobile crane in the possession of Bazley and controlled by Bazley's employee, Conrad, while replacing heavy rear wheels on an I-beam trailer owned and operated by McCormick. The I-beam trailer [driven by Witcjak, an employee of McCormick, and in the cus-

---

1. See Exhibit A to Michigan's Answer to the Amended Petition in Civil Action No. 24547 (Document No. 23). The policy is physically annexed to the Answer to the original Petition (Document No. 6).

2. Federal Insurance Company also seeks in Civil Action No. 24547 a declaration that its Policy No. FL5070792 (see Document No. 32) constitutes solely excess insurance as to J. Robert Bazley, Inc. and that it is only liable to the extent that Michigan's policy does not cover any liability due to policy limits.

tody and control of Witcjak and Casper (an employee of McCormick assigned to the vehicle as a "helper")] had been used to transport the main portion of a dragline shovel from Montgomery County, Pa., to a strip-mining site near Tamaqua, Pa., and it was necessary to remove the rear wheels in order to unload the dragline shovel. The rough ground and a downward slope toward the rear of the truck [3] made it easier to use the Bazley crane to replace the rear wheels so that the I-beam trailer could return to McCormick's place of business in Philadelphia (N.T. 63, Trunfio). When it was suggested by a person (not a McCormick employee), acting as foreman at the site, that the crane be used for this purpose, all McCormick's employees at the site acquiesced and joined in aiding the replacement of the rear wheels.[4] However, the crane operated by Conrad came into "contact or close proximity with" overhead power lines while the right rear wheels were being replaced, thereby causing the injuries to Witcjak. Thereafter, the right rear wheels, which were then almost in position, were replaced without the use of the crane,[5] and the I-beam trailer left the site en route to McCormick's place of business. It was part of Witcjak's job to see that the wheels were replaced properly.[6]

3. See Deposition of Trunfio, an employee of McCormick (Document No. 16 in Civil Action No. 24895 file). The slope ran toward the rear of the trailer (N. T. 43). The ground was rough and sloped to the extent of 6 inches in a distance of 15 feet from the rear of the I-beam trailer to which point the 8 rear wheels were pushed during the lowering of the bed of the trailer to permit the unloading of the dragline trailer (N. T. 44). Prior to the replacement of the wheels, the I-beam trailer was backed to within 3 feet of the wheels (N. T. 47).

4. Witcjak repeated several times in his deposition that he said "good" when this suggestion was made and the replacement of the wheels proceeded with the use of the crane (N. T. 24, 45, 51, & 78 of Document No. 45 in Civil Action No. 23402). See, also, Exhibit A attached to this opinion, quoting from Witcjak's testimony concerning the events at the time of the accident. See, also, N. T. 46–7, 50, 53–5 of Trunfio deposition. Trunfio testified that the person suggesting the use of the crane, who was acting as foreman of the operation, as well as the locally-supplied dragline shovel operator and oiler, were over near the dragline shovel (about 150 feet from the I-beam trailer, N. T. 23, 26, 30–1) when the accident happened (N. T. 57–8).

5. Michigan emphasizes the following testimony of Witcjak that if the crane had not been there the wheels would have been replaced by use of a winch (N. T. 32):

"Q. Now in your ordinary day to day work, when you were driving this truck for McCormick, how did you usually put the wheels on? A. If it was on the level, men helped us to push it on.

"Q. And you were not on the level, then what? A. If there was no crane there we would put them on with a winch.

"Q. Was your truck-trailer equipped with a winch? A. That's right.

"Q. Where was that; right back of the driver's cab? A. That's right.

"Q. So that if this truck crane hadn't been there on this day and you hadn't had men there, you would have used the winch to pull them into position, is that right? A. That's right.

"Q. And you have to have those wheels on, of course, before you can pull away from your unloading site? A. That's right."

Witcjak also testified as follows at N. T. 38–9 and 56:

"Q. But it is not unusual to use a crane, is it, to put these wheels back on? A. If they're on the level we can put them back on ourselves.

"Q. But if a crane is there you use the crane, don't you? A. When the foreman says he'll put them on with the crane we use the crane." (N. T. 38–9)
"Q. On this particular day, if there had not been a crane there you could have put the wheels back with the winch, couldn't you? A. That's right." (N. T. 56)

Trunfio testified that if the winch was used to help replace the wheels, "you would have to use a snatch block, because you couldn't pull it with the winch" (N. T. 82), but he did not know whether a snatch block was available that day or not (N. T. 87).

6. At N. T. 52 of Witcjak's deposition, he testified "my job was to see that the

In its policy, Michigan agrees to pay on behalf of McCormick all sums which the insured shall become legally obligated to pay as damages (1) because of bodily injury and (2) because of injury to or destruction of property, "caused by accident and arising out of the ownership, maintenance or use of the automobile" (see I, A & B). This policy also contains these clauses:

A. "Insuring Agreements

\* \* \* \* \* \*

"II Defense, Settlement, Supplementary Payments

"With respect to such insurance as is afforded by this policy for bodily injury liability and for property damage liability, the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

"(b) (1) \* \* \*

"(2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

\* \* \* \* \* \*

"(4) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;

and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

"III Definition of Insured

"\* \* \* the unqualified word 'insured' includes the named insured \* \* \*, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured \* \* \* or with the permission of (the named insured) \* \* \*."

B. "Declarations

\* \* \* \* \* \*

"Item 5. Occupation of the Named Insured Local and Long Haul Truckmen

"Item 6. The purposes for which the automobile is to be used are:

\* \* \* \* \* \*

X Commercial

\* \* \* \* \* \*

"(a) \* \* \*

"(b) The term 'Commercial' is defined as use primarily in the business occupation of the named insured as stated in Item 5 including occasional use for personal, pleasure, family and other business purposes.

"(c) Use of the automobile for the purpose stated includes the loading and unloading thereof."

Federal Insurance Company (hereinafter called "Federal") issued its Comprehensive Liability Policy No. FL 5070792 insuring Bazley against bodily injury and property damage liability (Document No. 32). Article III of the Insuring Agreements of this Federal policy states:

"\* \* \* the unqualified word 'insured' includes \* \* \* (2) any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission \* \* \*."

Condition 3(b) defines "automobile" as follows:

wheels were put in there right." His job was the operation of an I-beam trail-

er such as the one he was driving on October 2, 1956 (N. T. 70).

"(b) Automobile. Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer.

\* \* \* \* \* \*

"The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation or while being operated solely for locomotion, but not otherwise: if of the non-crawler type, any power crane or shovel, ditch or trench digger; and any air-compressing, building or vacuum cleaning, spraying or welding equipment or well drilling machinery."

Condition 14 of this policy provides:

"14. Other Insurance If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance."

7. Cf. Faron v. Penn Mutual Life Ins. Co., 3 Cir., 1949, 176 F.2d 290.

8. Michigan also argues that (a) it should have the right to show that it was not necessary to use the crane since the winch or manpower could do the job, and (b) the record does not show at whose request the crane was used. The undersigned finds that these factual issues need not be decided in order to determine the coverage of Michigan's policy as far as the Motions in Civil Action No. 24547 are concerned.

9. The depositions of Conrad, Ferrence and Yacobowsky have not been considered, since Michigan's counsel was not present when they were taken.

All parties concede that the substantive law of Pennsylvania governs the legal issues raised by the Motions.[7]

However, Michigan takes the position that this is not an appropriate case for summary judgment, using this language at page 2 of its brief filed 4/3/59: [8]

"Michigan Mutual has a right to introduce testimony to show that the use of the mobile crane was not contemplated in connection with the equipment of S & E McCormick by S & E McCormick. If that which was being done with respect to the vehicle of S & E McCormick was not with its permission, then there can be no coverage because the extended coverage clause of the policy specifically provides that the use of the vehicle must be with the permission of the named insured, otherwise there is no coverage for an extended coverage insured."

At the argument on April 6, the undersigned gave defendant Michigan an opportunity to file opposing affidavits as contemplated by F.R.Civ.P. 56, 28 U.S.C.A., if the essential facts established by the pleadings, depositions[9] and supporting affidavits of the moving parties were not accurate, but Michigan has filed no such affidavits or depositions which modify the facts summarized above.[10] Since

10. A letter sent by the undersigned on April 6 to all counsel, including counsel for Michigan, stated:
"I am writing to confirm the statements made at the argument today on the motions for summary judgment in the above matter.
"1. Any supplements to the record, including affidavits, which counsel may wish to file shall be filed no later than 12 noon next Monday, April 13. (It is my understanding that none of the attorneys objected to this limitation and that they all understood that the record must conform to the requirements of F.R.Civ.P. 56.) \* \* \*."
Also, since Newkirk's Motion for Summary Judgment (Document No. 4 of Civ-

the contemplated methods of replacing the rear wheels on the I-beam trailer are peculiarly within the knowledge of Michigan's insured,[11] F.R.Civ.P. 56(f) is inapplicable and the undersigned is required to determine whether, on the basis of the facts established as described above, plaintiffs have sustained the burden of proving as a matter of law that McCormick had granted permission for this use of the rear wheels of its vehicle. See United States, for Use of Kolton, v. Halpern, 3 Cir., 1958, 260 F.2d 590, 591. Although in this case Michigan has specifically and affirmatively raised as the tenth defense in its answer that the use of the automobile was "not with the permission of the named insured," the above-described facts are not in dispute and, under such circumstances, the Pennsylvania appellate courts have consistently held that whether or not the actual use is with the permission of the named insured is a question of law to be decided by the court. See Conrad v. Duffin, 1945, 158 Pa.Super. 305, 308, 44 A.2d 770; Freshkorn v. Marietta, 1942, 345 Pa. 416, 29 A.2d 15; and cases cited in those cases; cf. Galletly v. Eagle Indemnity Co., D.C.E.D.Pa. 1946, 65 F.Supp. 968. Also, the Halpern case, supra, holds that summary judgment is appropriate where, as in this case, "the record (does) not disclose a genuine issue as to any material fact."[12] [260 F.2d 591.]

## I. Civil Action No. 24547

### A. Motion of Federal

Paragraph 5 of the Complaint in Civil Action No. 23402, where Bazley is named as a defendant, contains this language:

"On or about second day of October 1956 at or about 4:30 P.M. * * * defendant (New Franklin Coal Company) was removing a crane (dragline) shovel, which the plaintiff's employer (McCormick) had transported by tractor-trailer to a site (in Pennsylvania) * * * with the assistance of a * * * truck crane furnished by the defendant (Bazley) and after the shovel crane had been removed by means of being driven off the tail end of the trailer after the rear wheels thereof had been removed, the plaintiff was engaged in reassembling the rear wheels which were being maneuvered into position by the truck crane when, by reason of the negligence of the defendants, * * *, he was caused to suffer * * * injuries * * *, when the cable or boom of said truck crane contacted or came into close proximity to certain overhead power lines."

■ Under Pennsylvania law, the obligation of a casualty insurance company to defend an action brought against an alleged insured is to be determined by the allegations of the complaint in the action against the alleged insured and the relevant record in the declaratory judgment proceeding. See Wilson v. Maryland Cas. Co., 1954, 377 Pa. 588, 105 A.2d 304, and cases there cited; cf. 50 A.L.R.2d 458.

On this record, Bazley was engaged in the actual use of the trailer with the permission of the named insured under the above-quoted portion of Article III of the insuring agreements. See Conrad v. Duffin, supra; Maryland Casualty

---

il Action No. 25615) was filed February 28, 1959, Michigan had had ample opportunity to create any factual issues on the record (by affidavits or depositions) prior to the argument on April 6.

11. The same counsel represent McCormick and Michigan.

12. Considering the depositions most favorably to Michigan, McCormick's employees, being over 100 miles from their employer, acquiesced in the use of the crane for replacing the rear wheels suggested by a foreman, and the record, taken as a whole, requires a finding of "permission" of McCormick as that word is used in Michigan's policy. See discussion below at page 10 and cf. Restatement, Second, Agency, §§ 35 and 229, Comment b, indicating that the employees under these circumstances had incidental authority and were acting within the scope of their employment.

Company v. Marshbank, 3 Cir., 1955, 226 F.2d 637; and cases cited in those cases. The employees of McCormick were authorized to use the trailer to take the dragline shovel to the site near Tamaqua and to bring that trailer back to their employer's place of business in Philadelphia. Part of this actual or particular use required the replacement of the rear wheels. Bazley was participating in this use at the time of the accident. As stated in Conrad v. Duffin, supra, 158 Pa.Super. at page 308, 44 A.2d at page 772, "the purpose of the policy was to protect those who might be injured by the use of the named insured's truck in which he had acquiesced." It is immaterial whether Bazley's "services were volunteered" or not, since he was using the trailer for the expressly authorized business occupation of the named insured and, hence, had its implied permission from its conduct in sending its trailer in the custody and control of employees who acquiesced in this use. See Conrad v. Duffin, supra, 158 Pa.Super, at page 309, 44 A.2d 770.

Although it is not necessary to decide whether this use falls under the terms "the loading and unloading thereof" in Item 6(c) since this phrase does not limit but expands the general word "use" in Insuring Agreement III and Item 6(b), which word covers the use by Bazley, the undersigned concludes that the Pennsylvania cases would consider this use part of "unloading." See Wheeler v. London Guar. & Accident Co., 1928, 292 Pa. 156, 163, 140 A. 855; Ferry v. Protective Indem. Co., 1944, 155 Pa.Super. 266, 269–270, 38 A.2d 493; Kaufman v. Liberty Mutual Insurance Company, 3 Cir., 264 F.2d 863; cf. Indemnity Insurance Co. v. Old Dominion Hoist Serv., 1958, 102 U.S.App.D.C. 141, 251 F.2d 382; S. Birch & Sons Const. Co. v. United Pacific Ins. Co., Wash.1958, 324 P.2d 1073, 1074.

■ Michigan contends (Fourth Defense in its Answer)[13] that "The accident was not caused by, nor did it arise out of, the ownership, maintenance or use of the trailer owned by McCormick, Inc." However, the policy (Insuring Agreement I) covers damages "caused by accident and arising out of * * * use of the automobile." It would have been easy for the policy to say damages "caused by accident and by the use of the automobile" if this had been intended. The courts have consistently held that there is no necessity for causal connection where the question is coverage under the policy, rather than liability to the plaintiff in the personal injury action. See Bituminous Cas. Corp. v. Travelers Ins. Co., D.C.Minn.1954, 122 F.Supp. 197, 200–201, and cases there cited; cf. Indemnity Insurance Co. v. Old Dominion Hoist. Serv., supra; Lumbermans Mut. Cas. Co. v. Employers' L. Assur. Corp., 1 Cir., 1958, 252 F.2d 463. The issue is whether the damages arose out of the use of the automobile. The Pennsylvania courts have held that coverage exists under such a clause when the use of the automobile was clearly not the cause of the injury. See Conrad v. Duffin, supra; Wheeler v. London Guar. & Accident Co., supra. As pointed out in Kaufman v. Liberty Mutual Insurance Company, supra, the basic issue in the Pennsylvania cases is whether there is a connection between the accident and the use of the insured vehicle.[14] In this

13. At page 6 of Michigan's brief dated 4/3/59, it argues "The injury producing mechanism was the mobile crane, not the I-Beam trailer." See, also, paragraphs 3 and 4, page 12, of that brief. This argument is irrelevant under the wording of the policy as interpreted by the Pennsylvania cases.

14. In the Wheeler case, supra, the court said in 292 Pa. at page 161, 140 A. at page 857, "The vehicle was an indispensable agency in the work, under the circumstances, and, as such, was at no time disconnected from it," and concluded its opinion with this sentence at page 163 of 292 Pa., at page 857 of 140 A. "We reach the conclusion then that, whether the truck may be considered to have been unloaded or not, it was in active operation and use at the time of the injury to the boy; that the accident occurred in the course of the transportation of plaintiffs' merchandise; and that

case, Witcjak suffered the accidental damages only because he had his hands on the wheels of such vehicle while replacing them as a necessary result of the unloading.

The Seventh, Eighth, Eleventh, Twelfth, and Fourteenth Defenses stated in the Amended Answer of Michigan (Document No. 23) are rejected on the basis of the authorities and policy provisions cited at pages 35 to 43 of Bazley's brief, which are being attached to this opinion.[15]

As stated above, Federal's policy provided that "the insurance under this policy with respect to loss arising out of the * * * use of any hired automobile insured on a cost of hire basis[16] or the use of any non-owned automobile shall be excess insurance over any other valid or collectible insurance." Since both the crane[17] and the dragline shovel were "non-owned" automobiles of Bazley, this clause applies to limit Federal's liability to excess coverage over any amount collectible under Michigan's policy.

### B. Motion of Conrad

Lamar P. Conrad has filed his cross-claim against defendant Michigan in this action (Document No. 16) and defendant has filed its answer to this cross-claim (Document No. 21), admitting paragraphs 10 and 11 of the cross-claim, which allege that Witcjak has brought suit against Conrad (Civil Action No. 24667) alleging that Conrad's negligence caused the injuries he suffered on October 2, 1956. Paragraph 3 of the Complaint in Civil Action No. 24667 alleges that "on or about October 2, 1956 * * * the defendant was the operator of a crane * * * when, due

to the careless and negligent operation of said crane, a part of said crane was brought into contact with or came into close proximity to overhead electric wires, causing the plaintiff who was working nearby to be severely injured * * *." In view of the provision in the definition of "automobile" in Condition 3 of Federal's policy, Conrad is not covered by the "omnibus clause" (Article III) of that policy since, as soon as the crane arrived at the unloading site, it ceased to be used for purposes of "transportation" or "locomotion" and, hence, was not an "automobile." Also, during the replacing of the right rear wheels, the deposition of Witcjak makes clear that the crane did not move. (See, also, Exhibit B attached.)

For the reasons advanced under A above, Conrad is covered by Article III of the Insuring Agreements of the Michigan policy.

### II. Civil Action No. 25615 (Motion of Newkirk)

The Complaint in this action alleges that Witcjak has instituted an action (Civil Action No. 24895) alleging that Newkirk is liable for personal injuries suffered by Witcjak on October 2, 1956, as the result of Newkirk's negligence. The Complaint in Civil Action No. 24895 alleges that:

"On or about October 2, 1956 the defendants (Newkirk and Moss Glenn Stripping Company) were in possession of land * * * at a site near Tamaqua, Pennsylvania when due to the negligence of the defendants a part of a truck crane being used at said time and place with the knowledge and consent of the said

---

the loss to which the accident gave rise was one against which defendant insurance company was bound to indemnify plaintiffs."

15. Michigan's briefs contained no argument based on these defenses, so they may have been abandoned. On the legal issues raised by the Seventh, Eighth and Eleventh Defenses, see, also, Walls to Use of v. Gaines, 1940, 46 Pa.Dist. & Co. R. 327, 333–338; Maryland Cas. Co.

v. New Jersey Mfrs. & C. Ins. Co., 1958, 48 N.J.Super. 314, 137 A.2d 577; Greaves v. Public Service Mutual Insurance Co., 1959, 5 N.Y.2d 120, 181 N.Y.S.2d 489, 155 N.E.2d 390.

16. See paragraph 1(6) of Conditions on page 3 of Federal's policy (Document No. 32).

17. The crane may also have been a hired automobile insured on a cost of hire basis. See footnote 16.

defendants was brought into contact with or came into close proximity to overhead electric wires causing the plaintiff who was working nearby to be severely injured as more fully set forth hereinafter.

"5. The negligence of the defendants by their duly authorized agents, servants, workmen and employees consisted of:

"(a) failing to properly supervise the work in question;

"(b) permitting said truck crane to be used in a dangerous and negligent fashion;

"(c) failing to furnish the plaintiff with a safe place to work;

"(d) negligence at law."

This Complaint makes no reference to supervision by Newkirk of the work nearby being done by plaintiff (Witcjak) nor to any use of the I-beam trailer by Newkirk.[18] There is nothing in the record to show that the foreman suggesting the use of the crane was an employee of Newkirk.[19] Trunfio states in his deposition that he, Witcjak, and Casper (all employees of McCormick), as well as the crane operator Conrad (employee of Bazley), were the only ones engaged in replacing the rear wheels at the time of the accident.[20] For this reason, the record[21] does not establish that Newkirk was either using the trailer or that it was legally responsible for the use of the trailer.* Accordingly, Newkirk was not an insured under the language of Article III quoted above and its motion must be denied.[22]

Exhibit A

(Excerpts from Deposition of Alex Witcjak—Document No. 45 in Civil Action No. 23402)

"Q. * * * what was the next step you took? A. Started putting our jacks underneath the trailer.

"Q. Did you get the rear end of the trailer jacked up? A. Then this fellow come over and said to my helper he'll put the wheels on for him.

"Q. What fellow is that, that said that? A. Fellow supposed to be the foreman.

"Q. In other words, a man who was supposed to be the foreman came over to Mr. Casper and said he, the foreman, would put the wheels back on; is that right? A. That's right. And I says 'Good.'

"Q. You were there? A. Yes. I was on the other side.

18. Although plaintiff alleges in paragraphs 7 and 11 of the Complaint in Civil Action No. 25615 that two persons in the general employ of Newkirk had been loaned for the purpose of unloading the dragline shovel and were engaged in such unloading at the time of the accident, defendant demands proof of such allegations in its Answer and denies that the accident happened during such unloading.

19. Although the depositions may show that Newkirk, as possessor of the land, was legally responsible for the use of the crane near the dangerous overhead wires, they do not make clear that it was legally responsible for the use of the trailer.

20. See N. T. 57–8 (summarized in the last sentence of footnote 4) of Trunfio deposition (Document No. 16 in Civil Action No. 24895 file).

21. Even if all McCormick's answers to interrogatories (Document No. 14 in Civil Action No. 24547) form part of the record which may be considered in deciding this Motion for Summary Judgment, there is not sufficient proof to justify the entry of judgment for Newkirk. However, it would appear that, at most, only such portions of these answers as constitute "admissions" may be considered in deciding a Motion for Summary Judgment. See third sentence of F.R.Civ.P. 56(c).

* See Article III of Insuring Agreements quoted at page 5 above.

22. The following briefs are being placed in the Clerk's file (Civil Action No. 24547): Brief of Federal filed 4/3/59, except for pp. 35–43 which are attached hereto; Memorandum Brief of Conrad filed 4/3/59; Brief of Michigan filed 4/3/59; Brief of Newkirk filed 4/4/59; Supplementary Memorandum of Newkirk filed 4/13/59; Supplementary Brief of Michigan filed 4/13/59; Supplementary Memorandum of Federal filed 4/16/59.

"Q. And you said 'Good'? So then you didn't do anything more about putting back these wheels, is that it? A. No, I did not. Then their fellows went back with the crane to hook on and bring it over." (N.T. 24)

"Q. Just what were you doing when the accident occurred? A. Jacking up our trailer when this man said he'll put the wheels on for us.

"Q. The man who said that was the man that you have called the foreman today, is that right? A. That's right.

"Q. Now after that was said, what was done? A. We started jacking up our trailer, then his men went over and started bringing the wheels over with the crane.

"Q. With the crane. And did one set of wheels get put on, or were you hurt when the first set was being put on? A. No; they brought the left-hand set over and they set them down and I was working on that. When they set 'em down I picked up the pin and put it in there, then I picked up the lock pin and put that on there, then I put the bolt in and then I tightened the lock and I started to put on the air hose when they set the other ones down.

"Q. Now, when they set the other ones down, who shoved them into position? A. The operator set them down there.

"Q. Did anybody have to push them into position by hand? A. You can't push them by hand.

"Q. Well, was anyone touching them? A. My helper said to me, 'They're stuck', and I went over. As I stepped up on the trailer and walked across the trailer I put my hand on there to look, and that's the end I know.

"Q. Did you have anything in your hand at that time? A. I did not; only where I was holding on to the thing there.

"Mr. White: Holding on to what?

"The Plaintiff: Holding on to the trailer wheels." (N.T. 27–9)

Exhibit B

There is nothing in this record to overcome the "factual presumption" arising under Pennsylvania Law that Conrad remained in the employ of Bazley and did not become an employee of McCormick. See Pennsylvania Smelting & Refining Co. v. Duffin, 1950, 363 Pa. 564, 567, 70 A. 2d 270, 17 A.L.R.2d 1384. Also, there is no adequate evidence that Conrad consented to being an employee of Bazley. See Sames v. Borough of Perkasie, 1930, 100 Pa.Super. 402, 407.