Robert Y. MOFFAT, Plaintiff,

v.

The METROPOLITAN CASUALTY IN-
SURANCE COMPANY OF NEW
YORK, Defendant.
Civ. No. 7126.

United States District Court
Middle District Pennsylvania.

Aug. 6, 1964.

As Amended Aug. 10, 1964.

Court of Lackawanna County, Pennsylvania, and for the failure to pay judgments entered in 25 of the actions.

Plaintiff is Robert Y. Moffat (Moffat), a citizen of Pennsylvania. Defendant is The Metropolitan Casualty Insurance Company of New York (Metropolitan), a corporation incorporated under the laws of the State of New York with its principal place of business in Newark, New Jersey.

The actions in the State court (smog cases) were brought by property owners of the Borough of Taylor, Lackawanna County, Pennsylvania. The defendants were Moffat and the Glen Alden Coal Co. (Glen Alden). In these actions the property owners sought to recover for damages to their properties caused by the emanation of destructive gases from culm banks created and maintained by Moffat and Glen Alden. The litigation resulted in judgments in favor of 25 of the property owners and against Moffat, only. In one action there was a judgment in favor of Moffat. There were judgments in favor of Glen Alden in all 26 actions.

The policy contained the following provisions:

"I Coverage B—Property Damage Liability

"To pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

"II Defense, Settlement, Supplementary Payments

"(a) defend any suit against the Insured alleging such injury, * * or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; * * *."

Metropolitan's defenses are that the claims and the recoveries in the smog cases are not within the coverage of the policy because the damages were the result of intentional conduct by Moffat, and were not the result of an accident;

Matthew D. Mackie, Welles & Mackie, William J. Oliver, Scranton, Pa., for plaintiff.

Walsh & O'Neill, Scranton, Pa., for defendant.

SHERIDAN, Chief Judge.

This is an action by an insured against his insurance company under a comprehensive liability policy for refusal to defend 26 trespass actions brought against the insured in the Common Pleas

the Statute of Limitations; and Collateral Estoppel.

Moffat seeks to recover from Metropolitan $75,254.07 as the fair and reasonable cost of defending the smog cases, and $62,870.40 paid by Moffat to satisfy the judgments.

 The policy was delivered to Moffat in Pennsylvania and was intended to be performed in Pennsylvania. The law of Pennsylvania controls. Newspaper Readers Service, Inc. v. Canonsburg Pottery Co., 3 Cir. 1945, 146 F.2d 963.

## SMOG CASES

Culm banks are refuse banks resulting from the mining and preparation of coal. Usually they contain rock, shale, bone, iron pyrites and other waste products, as well as reclaimable coal. The complaints charged that the banks oxidized and produced hydrogen sulphide and other destructive gases which caused the property damage. The culm banks were located on property owned by Glen Alden but leased to Moffat in 1937. At the time of the leasing there was a burning culm bank on the property. Subsequently, Moffat started four additional banks known as the Washington Street, Main Street, Fourth Street banks and a silt dam. The purpose of the latter was to separate silt waste from water used in the breaker before discharging the water into natural streams, as provided under Pennsylvania law.[1]

There were two trials in the State court. The first was a jury trial—Waschak v. Moffat. In the second, the other 25 cases were consolidated for trial before the court without a jury—Evans v. Moffat.

1. WASCHAK.—In Waschak the jury returned a verdict for the plaintiff and against Moffat and Glen Alden. Judgment n. o. v. was entered for Glen Alden. The case was tried on the theory of absolute nuisance. The Superior Court affirmed.[2] The Supreme Court reversed.[3] In doing so it held that the strict rule of Rylands v. Fletcher, L.R. 3 H.L. 330 has not been followed in Pennsylvania, and refused to apply the Absolute Nuisance Doctrine. Instead, it adopted Section 822 of the Restatement of Torts[4] as setting forth the principles for determining liability resulting from a private nuisance. Then it proceeded to apply § 822(d) (i) to the facts and held: " * * * · it is evident the invasion of plaintiffs' land was clearly *not intentional*. And even if it were, for the reasons above stated, it was not unreasonable." The Superior Court was reversed and judgment entered for Moffat and Glen Alden.

2. EVANS.—In Evans the trial was by the court without a jury. The defendants were allowed to file amended answers which raised the defense of res judicata on the basis of Waschak. By pretrial agreement, approved by the court, the record in Waschak was admitted in evidence on the question of liability. The records in Evans and Waschak on liability are in all respects identical. They differ only on damages. The trial court said that since evidence as to liability in the 25 cases was identical with Waschak, the law was firmly fixed by the Supreme Court decision in Waschak. It decided that the statement in the Supreme Court opinion in Waschak that invasion of the property owners' land was not intentional was a conclusion of

1. Act of June 22, 1937, P.L.1987, 35 P.S. § 691.1 et seq.

2. Waschak v. Moffat, 1953, 173 Pa.Super. 209, 96 A.2d 163.

3. Waschak v. Moffat, 1954, 379 Pa. 441, 109 A.2d 310, 54 A.L.R.2d 748.

4. "The actor is liable in an action for damages for a non-trespassory invasion of another's interest in the private use and enjoyment of land if,

"(a) the other has property rights and privileges in respect to the use or enjoyment interfered with; and
"(b) the invasion is substantial; and
"(c) the actor's conduct is a legal cause of the invasion; and
"(d) the invasion is either
"(i) intentional and unreasonable; or
"(ii) unintentional and otherwise actionable under the rules governing liability for negligent, reckless or ultrahazardous conduct."

the opinion writer, and, therefore, was not res judicata. It then found as a fact that the invasion was intentional. The trial court concluded, however, that the Supreme Court holding that the invasion, even if intentional, was not unreasonable, was a flat declaration of law, and determined there was no liability on the basis of res judicata. Judgments nisi were entered for Moffat and Glen Alden.[5] After final judgments were entered, the court made absolute a rule to open the judgments and permit the property owners to file exceptions to the adjudication and decree nisi. Moffat and Glen Alden appealed to the Supreme Court. They argued it was futile to open the judgments because Waschak was controlling. The Supreme Court affirmed the opening of the judgments and remanded to the trial court for further proceedings.[6] In doing so it held Waschak was not res judicata, but that it was at most stare decisis as to the applicability of § 822(d). Upon remand the trial court made a supplemental adjudication in which it revoked some prior conclusions of law and made additional findings of fact. The principal additional finding was that the invasion was unreasonable as well as intentional.[7] Judgments were entered for the property owners and against Moffat. Glen Alden was again relieved of liability. On appeal the Superior Court affirmed.[8] The Supreme Court refused allocatur.

Thus, although the records in Waschak and in Evans on liability are identical, the results are opposite.

## OBLIGATION TO INDEMNIFY

 The obligation of Metropolitan to indemnify Moffat depends upon a determination of whether the property damages were caused by accident. Since accident is not defined in the policy, it must be interpreted in its usual, ordinary and popular sense. M. Schnoll & Son, · Inc. v. Standard Accident Insurance Company, 1959, 190 Pa.Super. 360, 154 A.2d 431. In construing the policy all ambiguities must be resolved in favor of the insured. Papadell v. Harleysville Mutual Casualty Company, 1963, 411 Pa. 214, 191 A.2d 274.

In Dilks v. Flohr Chevrolet, 1963, 411 Pa. 425, 432, 192 A.2d 682, 686, the court defined accident:

"Our Court in North American Life & Accident Insurance Co. v. Burroughs, 69 Pa. 43, 51, 52, defined the terms 'accident' and 'accidental': 'An accident is "an event that takes place without one's foresight or expectation; an event which proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected; chance; casualty; contingency." And accidental signifies, "Happening by chance or unexpectedly; taking place not according to the usual cause of things; casual; fortuitous. We speak of a thing as accidental when it falls to us as by chance and not in the regular course of things; * * *." Webster's Dictionary ad verba.' Over 100 years ago and prior to Burroughs, supra, this Court in McCarty et al. v. New York & Erie Railroad Company, 30 Pa. 247, 250, 251, considered whether 'accidental fire' included fires of negligent as . well as of non-negligent origin. * * The Court said: 'If accident and negligence be not opposites, we cannot regard them as identical, without confounding cause and effect. *Accident,* and its synonyms casualty and misfortune, *may proceed [or result] from negligence, or other cause known, or unknown.*' (Emphasis supplied.) See also: Springfield Township v. Indemnity Insurance Company, 361 Pa. 461, 463, 64 A.2d 761; Hardware Mutual Insurance

---

5. Glen Alden was relieved of liability for the additional reason that it was a lessor out of possession.

6. Evans v. Moffat, 1957, 388 Pa. 559, 131 A.2d 141.

7. Finding of Fact No. 57, footnote 9, infra.

8. Evans v. Moffat, 1960, 192 Pa.Super. 204, 160 A.2d 465.

Company of Minnesota v. C. A. Snyder, Inc., 3 Cir., 242 F.2d 64. The court below was correct in holding that an 'accidental fire' included fires of negligent as well as non-negligent origin."

In Black's Law Dictionary, 4th Ed., 1957, page 30, in defining accident, it is stated:

" * * * In its most commonly accepted meaning, or in its ordinary or popular sense, the word may be defined as meaning a fortuitous circumstance, event, or happening, an event happening without any human agency, or if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected *by the person to whom it happens; * * *.*" (Emphasis supplied.)

Likewise in 1 C.J.S. Accident page 427, it is said:

"Common Popular Sense. In its most commonly accepted meaning, or in its ordinary or popular sense, the word may be defined as meaning a fortuitous circumstance, event, or happening, an event happening without any human agency, or, if happening wholly or partly through human agency, an event which under the circumstances is unusual and unexpected *by the person to whom it happens; * * *.*" (Emphasis supplied.)

Pennsylvania has adopted this view. In Hey v. Guarantors' Liability Indemnity Co. of Pennsylvania, 1897, 181 Pa. 220, 224, 37 A. 402, the court approved the definition of accident in Bouvier's Law Dictionary, " * * * 'an event which under the circumstances, is unusual and unexpected by the person to whom it happens. * * *'" There is nothing in the smog cases to suggest that the oxidation of the banks and resultant damage were usual or expected from the viewpoint of the property owners. The Superior Court decision in Evans noted that for many years prior to 1947 there had been fires in culm banks in Taylor without incident. The invasion of the property owners' land occurred between June 1948 and June 1951. It is the special knowledge of Moffat which underlies the finding of intentional invasion. The Supreme Court decision in Evans noted that the trial court's finding of intentional invasion " * * * was an ultimate inference of fact supported by the basic findings as to the defendants' knowledge of the attendant physical conditions relative to the dumps and their likely deleterious effects." [9]

9. Findings of Fact by trial court:
" * * * *

"38. It has been the custom and practice in the anthracite industry of Lackawanna County to maintain the culm banks as close to the breaker as possible without interfering with the operation of the breaker. This practice was followed by every coal breaker that has operated in Taylor as well as in the other municipalities in the county. It has been the general practice throughout Pennsylvania's anthracite region.

"39. Moffat knew or should have known when constructing the Washington Street bank with discarded breaker material that it could oxidize, ignite and give off products of combustion of the component materials in the bank.

"40. Moffat knew or should have known when constructing the silt dam with the same discarded breaker material that the walls of the dam could oxidize, ignite and give off products of combustion of the component materials in the dam.

"41. Moffat knew or should have known when constructing the Fourth Street dump with discarded breaker materials that it could oxidize, ignite and give off products of combustion of the component materials in the dump.

"42. Moffat knew or should have known of the nature of the products of oxidization or combustion of the materials in Moffat's various banks, dams and dumps, of the harmful effects thereof to property and persons, and of the high probability of the circulation of such products by atmospheric means. As a coal operator of experience, Moffat could be expected to know the familiar history of burning culm banks in the anthracite industry and had available the technical services and personnel to obtain such knowledge.

In Leebov v. United States Fidelity & Guaranty Company, 1960, 401 Pa. 477, 165 A.2d 82, the court had no difficulty in holding that a landslide during excavation by a building contractor was an accident. In Robert Hawthorne, Inc. v. Liberty Mutual Insurance Company, E.D.Pa.1957, 150 F.Supp. 829, affirmed per curiam 251 F.2d 343, the falling of debris during demolition operations was held an accident. The facts in these cases are not as strong as in the instant case. Landslides and debris during excavation and demolition are more likely than the oxidation of culm banks. Moreover, the negligence findings do not rule out accident from the viewpoint of Moffat. The concept of foreseeability cannot be used to determine accident under a liability policy. See Minkov v. Reliance Insurance Co. of Philadelphia, 1959, 54 N.J.Super. 509, 149 A.2d 260.

Metropolitan relies heavily on Wilson v. Maryland Casualty Company, 1954, 377 Pa. 588, 105 A.2d 304, 50 A. L.R.2d 449. In that case the insurer refused to defend an action for assault and battery against the insured. The insured settled the action and then brought suit to recover the amount of the settlement. The policy contained a clause "* * * Assault and battery shall be deemed an accident unless committed by or at the direction of the insured." The trespass complaint alleged that the plaintiff was the victim of an assault and battery committed by the insured. The insured contended this charge was groundless and therefore the company was required to defend. The court upheld the insurer and said the obligation "was not to defend all suits and claims whatsoever merely because they were groundless, but to defend all suits and claims *covered by the policy whether or not* they were groundless. In other words, a cause of action was *not* insured *because* of its being false, but *was* insured *if covered by the policy, whether or not it was false.* The question is not as to the truth or falsity of a claim, but whether it is covered by the policy; if it is, the Company must defend it; if it is not, its truth or falsity is wholly immaterial." The refusal to defend was upheld because of the exclusion, and not because the tort was intentional, as argued by Metropolitan.[10] To construe the policy as inapplicable to intentional conduct would exclude from coverage many negligence claims, an erroneous result for a liability policy. "It is also well settled that if an insurance policy is reasonably susceptible of two interpretations it is to be construed in favor of the insured in order not to defeat, without plain necessity, the claim to indemnity which it was the insured's object to obtain. * * *" Blue Anchor Overall Co. v. Pennsylvania Lumbermens Mutual Insurance Company, 1956, 385 Pa. 394, 123 A.2d 413, 59 A.L. R.2d 546. Pennsylvania recognizes that accident includes negligence. Dilks v. Flohr Chevrolet, 411 Pa. 425, 192 A.2d 682, supra; Hardware Mutual Insurance Company of Minnesota v. C. A. Snyder, Inc., 3 Cir. 1957, 242 F.2d 64, 67.

"53. The invasion of the plaintiffs' interests was intentional in that the defendants knew the invasion was resulting and was substantially certain to result from their conduct, and yet persisted in such conduct by establishing new refuse dumps in residential locations.

"57. The defendants Moffats' repeated selection of residential sites for refuse dumps in close proximity to plaintiffs' properties and the homes, churches and schools of the Borough of Taylor and the harm caused thereby was unreasonable in that the utility of the actors' conduct was outweighed by the gravity of the harm."

10. In Thill Candy Company, Inc. v. Farm Bureau Mutual Automobile Insurance Company, E.D.Pa.1959, 171 F.Supp. 237, 243 the court distinguished Wilson in this way: "Wilson v. Maryland Cas. Co., 1954, 377 Pa. 588, 105 A.2d 304, 50 A.L.R.2d 449, does not require a different conclusion. There the Court held that a 'defense' clause which required the insurance company only to defend suits '*alleging*' injuries insured against created no duty to defend when the complaint affirmatively *alleged* an injury which was *not* insured against." (All underlined words italicized in original.)

The trial court found Moffat's actions intentional as defined in § 825(b) of the Restatement of Torts, stating this conclusion followed from Findings of Fact Nos. 39, 40, 41 and 42. There was no finding under § 825(a).[11] Finding of Fact No. 57, the supplemental finding of unreasonableness, is a finding in accordance with § 826.[12] The comment under this section states that intentional invasion does not necessarily mean it is unreasonable, that unreasonableness is a question of fact, and that "The question is not whether a reasonable person in the plaintiff's or defendant's position would regard the invasion as unreasonable, but whether reasonable persons generally, looking at the whole situation impartially and objectively, would consider it unreasonable."

■ The comment under clause (d) of § 822 states "* * * Liability is imposed only in those cases where the harm or risk to one is greater than he ought to be required to bear under the circumstances, at least without compensation. * * *" In its brief counsel for Metropolitan argued that, "if the act was intentional, of course it could not be accidental, or something caused by accident." No case has been cited, and research has not disclosed any, for such a principle. The cases relied on by Metropolitan were situations in which the allegations of the complaint came within an express exclusion, as Wilson v. Maryland Casualty Company, 377 Pa. 588, 105 A.2d 304, 50 A.L.R.2d 449, supra, and Warner v. Employers' Liability Assurance Corporation, 1957, 390 Pa. 62, 133 A.2d 231, or in which the insurer had not been given an opportunity to assert the defense of intentional tort in the indemnity action, as in Vaksman v. Zurich General Accident & Liability Insurance Co., Ltd., 1953, 172 Pa.Super. 588, 94 A.2d 186. In the latter, the insurer refused to defend a negligence action against the insured because it contended the acts of the insured were *deliberate* and *intentional*. It was not possible to defend the insured and at the same time protect its own interests. Judgment on the pleadings was reversed by the Superior Court so that the insurer could assert its defense. This case does not hold that all intentional torts are excluded from accident coverage in a liability policy. The inference is that certain types may be excluded, as in Casper v. American Guarantee and Liability Insurance Company, 1962, 408 Pa. 426, 184 A.2d 247, cited by Metropolitan. In that case the court held that damages from dust and debris resulting from demolition and construction by a contractor were not caused by an accident. The trespass action was settled before trial. In affirming judgment on the pleadings, the court said: "We conclude that the acts complained of in Engel's complaint cannot be construed as alleging damages 'caused by accident', the harmful conduct being 'reasonably calculated to cause substantial damage of the very sort that occur[red]'. * * *" This cannot be applied in the smog cases. The banks were created and maintained in accordance with the general custom and practice of the anthracite industry. That Moffat knew or should have known that the banks could oxidize and give off products which could cause harmful effects to property in view of the high probability of circulation by atmospheric means does not spell out conduct calculated to cause substantial damage. In Evans the Superior Court ruled that § 825(a) did not apply, thus holding that Moffat's conduct was not for the purpose of causing the invasion. Neither was it

11. "An invasion of another's interest in the use and enjoyment of land is intentional when the actor
 "(a) acts for the purpose of causing it; or
 "(b) knows that it is resulting or is substantially certain to result from his conduct."

12. "An intentional invasion of another's interest in the use and enjoyment of land is unreasonable under the rule stated in § 822, unless the utility of the actor's conduct outweighs the gravity of the harm."

for the purpose of causing the damage. It is clear that a § 822(d) (i) tort, based on the findings in the smog cases, is not excluded from accident coverage in a liability policy.

## DUTY TO DEFEND

The obligation to defend and the obligation to indemnify are separate and distinct. There may be an obligation to defend although no obligation to indemnify, since different elements of proof are required to establish the breach of each obligation. Gedeon v. State Farm Mutual Automobile Insurance Company, 1963, 410 Pa. 55, 188 A.2d 320.

The pertinent parts of the "smog" complaints are set out in the margin.[13]

In substance the complaint stated that Moffat had created culm banks which oxidized and produced noxious and poisonous gases causing property damage. Metropolitan argues that the complaint on its face does not show an accident, but rather an intentional wrongdoing, and one which could not be an accident because of the "natural and probable result" averment in paragraph 15.

The allegation of wanton misconduct in paragraph 20 of the complaint did not justify the disclaimer if the complaint otherwise alleged facts which would support a recovery under the policy. Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484, 72 A.L.R.2d 1242, supra; Pittsburgh

---

13. "9. The Defendants, Robert Y. Moffat and W. K. Moffat, trading as the Moffat Coal Company, commencing about the year 1943 and continuing since that time began to use the tract of land on Washington Street as a dumping ground for refuse consisting of coal, slate, rock and other by-products of anthracite mining and dumped millions of tons of such refuse at such location, creating an enormous mountain of refuse. The location was a convenient one for the Defendants in that it was a short haul from the Defendants' coal breaker.

"10. At approximately the same time the said Defendants began to use the North Main Street property for similar use and dumped additional tons of the refuse material at that location.

"11. Sometime about the year 1948 the refuse material on Washington Street became sufficiently oxidized to release quantities of obnoxious and poisonous gases consisting of hydrogen sulphide, and carbon monoxide which descended on the homes and properties of residents in the Borough of Taylor, and this condition progressively became worse and continues to worsen even to this day.

"12. The refuse material deposited on N. Main Street also oxidized about in the year 1948 and began to produce the noxious, deadly and offensive gases.

"13. While both of these dumps were oxidizing and releasing their foul and dangerous gases, and the Defendants knew or should have known of the public nuisance thereby created, the Defendants, W. K. Moffat and Robert Y. Moffat, trading as the Moffat Coal Company, began to construct a huge settling

dam in the rear of private properties at the N. Main Street location, and used hundreds of thousands of tons of the same type refuse to construct the sides and walls of their huge dam.

"14. Shortly thereafter the vast quantities of the refuse used in constructing this dam began to oxidize and to throw into the air additional quantities in great volume of the hydrogen sulphide, carbon monoxide and other such noxious, dangerous and offensive gases, and this new location became one of the principal sources of the nuisance and danger the Defendants were maintaining.

"15. The oxidation and release of poisonous and obnoxious gases mentioned in Paragraphs 11, 12, and 14 above was the natural and probable result of accumulating such refuse in large deposits.

"16. While the deposits of debris at the three locations above described were releasing their foul and dangerous gases in great amounts, the Defendant, Moffat Coal Company nevertheless in further wanton and flagrant violation of the rights and safety of the Plaintiff and others residing in Taylor Borough began to and has since piled the same type debris in huge amounts at a new location on Fourth Street, in a residential neighborhood of Taylor Borough and that accumulation of refuse is now similarly oxidizing and releasing the same type destructive gases.

\* \* \* \* \*

"20. The action of the Defendants in creating and maintaining the nuisance herein described was willful, wanton and oppressive, and the Plaintiff demands punitive damages in addition to compensatory damages."

**174**

Plate Glass Company v. Fidelity and Casualty Company of New York, 3 Cir. 1960, 281 F.2d 538. The claim of accident is not defeated because the complaint alleges a series of acts, and not just one isolated occurrence. The Berylium Corporation v. American Mutual Liability Insurance Company, 3 Cir. 1955, 223 F.2d 71, 49 A.L.R.2d 1256.

The most recent pronouncement in Pennsylvania is that the insurer is required to defend if the claim potentially comes within the coverage of the policy. Gedeon v. State Farm Mutual Automobile Insurance Company, 410 Pa. 55, 188 A.2d 320, supra. In the past there has been a conflict as to whether the insurer could rely on the claim. See University Club v. American Mutual Liability Insurance Co., 1937, 124 Pa.Super. 480, 189 A. 534; Zeitz v. Zurich General Accident & Liability Insurance Company, Ltd., 1949, 165 Pa.Super. 295, 67 A.2d 742; Federal Insurance Co. v. Michigan Mutual Liability Company, E.D.Pa.1959, 172 F.Supp. 858.

A contract of insurance must be interpreted in the light of the subject matter. Lewis v. Fidelity & Casualty Co., 1931, 304 Pa. 503, 156 A. 73. In that case the court emphasized at page 508 of 304 Pa., at page 74 of 156 A. " * * * The words employed reach out to bring within them the ordinary and incidental objects intended to be covered by the work that is insured. They should be considered in the light of the nature of the particular work of carpentry under which the assured was acting, and whether the thing done was a necessary part of that work." Metropolitan had complete knowledge of Moffat's business operations. The policy contains references and riders which have special application to coal mining. The general practice in Lackawanna County and in the anthracite field is to locate culm banks as close to the breaker as possible. The trial court found this was the practice followed by every breaker owner in Taylor and in every other municipality in the county. There was uncontradicted testimony that of 227 culm banks in Lackawanna and Luzerne Counties only 28, or about 12% either are on fire or have burned, and that none of these had ever emanated destructive gases such as those created by Moffat.[14]

The smog complaints would have supported a recovery under the doctrine of Rylands v. Fletcher or absolute nuisance. In its brief Metropolitan admitted that the property owners "conformed their evidence to their pleadings." Although the case was tried on the nuisance theory, the Restatement Rules were applied without any amendments to the complaint. Under these circumstances, if Moffat is entitled to indemnity, there was a breach of the duty to defend because the claims were covered by the policy.

The averment of natural and probable result does not bar a finding of accident. It is merely an allegation of foreseeability which has been used from time to time by Pennsylvania courts in negligence cases to find a legal cause, proximate cause and intervening cause.[15] The averment was surplusage insofar as the doctrine of Rylands v. Fletcher and absolute nuisance are concerned. Whether it was necessary to support § 822 liability was not discussed by either the Supreme or Superior Courts. The important fact is that § 822 was applied.

14. This testimony was admitted in the instant proceedings over Metropolitan's objection that Moffat was bound by the findings in the smog cases. It was admissible only on the duty to defend. Cadwallader v. New Amsterdam Casualty Co., 1959, 396 Pa. 582, 152 A.2d 484, 72 A.L.R.2d 1242; Federal Insurance Co. v. Michigan Mutual Liability Company, E.D.Pa.1959, 172 F.Supp. 858, 863.

It was not admissible on the duty to indemnify, and has not been considered in that connection. Builders Supply Co. v. McCabe, 1951, 366 Pa. 322, 77 A.2d 368, 24 A.L.R.2d 319; Crawford v. Pope & Talbot, Inc., 3 Cir. 1953, 206 F.2d 784.

15. For a discussion of "natural and probable consequences" see 9 Vill.L.Rev. 453 (1964).

In the inspection of the complaint to determine potential coverage, the insurer cannot take the viewpoint of a common law pleader. If it is in doubt, it may defend with the understanding that it is not an admission of coverage. Laroche v. Farm Bureau Mutual Automobile Insurance Co., 1939, 335 Pa. 478, 7 A.2d 361. If it elects not to defend, it does so at its peril. Cadwallader v. New Amsterdam Casualty Company, 396 Pa. 582, 152 A.2d 484, 72 A.L.R.2d 1242, supra. One of the perils is the plasticity of modern pleading. Lee v. Aetna Casualty & Surety Co., 2 Cir. 1949, 178 F.2d 750.

## STATUTE OF LIMITATIONS

Metropolitan raises the statute of limitations as a defense against the claim for failure to defend. It does not assert it as a bar to the claim for indemnity.

The applicable statute of limitations is six years. Act of March 27, 1713, 1 Smith Laws 76, § 1, 12 P.S. § 31. The complaints in the smog cases were filed between March 20, 1951 and June 26, 1951. Forthwith, upon being served, Moffat delivered copies to Metropolitan and demanded that it undertake the defense of the actions. Metropolitan disclaimed any obligation to defend or pay any judgments which might be rendered against Moffat. Metropolitan argues that the statute began to run on the breach of duty and that this was on the date of disclaimer in 1951. It suggests as alternates the dates Moffat paid certain expenses, commencing in August 1951 and continuing through 1952. It also suggests a third date—November 8, 1954, when the Supreme Court reversed the Superior Court in Waschak and granted judgment n. o. v. for Moffat. Since the instant suit was started on December 1, 1960, the conclusion is that all bills for which reimbursement is sought have been outlawed by the statute.

In Ayers v. Morgan, 1959, 397 Pa. 282, 154 A.2d 788, the court said a statute of limitations must be read in the light of reason and common sense.

The language of the Pennsylvania Supreme Court in the later case of Sicola v. First National Bank of Altoona, 1961, 404 Pa. 18, 20, 170 A.2d 584, 585, 87 A. L.R.2d 1044, in commenting on the Ayers case, is appropriate:

" * * * The cited case, involving the discovery nine years after a surgical operation that the defendant doctor had left a sponge inside a patient, also informs us that a statute of limitation must be read in the light of common sense and reason, and that the Legislature is presumed not to intend unreasonable or absurd results."

The result contended for by Metropolitan is absurd. In this day of crowded court calendars and delays of years before trial, an insured could find that the statute had run long before he had incurred his trial and appellate expenses. See Delta Theaters, Inc. v. Paramount Pictures, Inc., E.D.La.1958, 158 F.Supp. 644, appeal dismissed, 259 F.2d 563. Also it would lead to a multiplicity of suits, long in disfavor in law. There would be a suit for costs and expenses and then, after judgment against the insured, a suit for indemnity. The latter cannot be started until there is a final judgment against the insured.

The statute of limitations does not begin to run until the right of action is complete. Sicola v. First National Bank of Altoona, 404 Pa. 18, 170 A.2d 584, 87 A.L.R.2d 1044, supra. The Waschak record was not complete until the Supreme Court denied the petition for reargument, which was December 13, 1954.

There was a continuing of breach of the duty to defend. The policy required Metropolitan to represent Moffat in every state of the proceedings in the smog cases—investigation, preparation for trial, trial, post-trial, and appellate proceedings. It had the right at any time to revoke its disclaimer. For purposes of the statute of limitations, the following from 54 C.J.S. Limitations of Actions § 151, is controlling:

"§ 151 Continuing Contracts. * * Thus it has been held that if a full recovery of damages can be had on the first breach the statute then begins to run, and when this right of action becomes barred plaintiff cannot recover for any subsequent breach although it occurred within the statutory period before action; it is otherwise where only partial or nominal damages are recoverable for the first breach."

 Even if the statute has run on the claim for failure to defend Moffat can recover his costs and expenses under the indemnity clause, which is not subject to the bar of the statute because the cause of action did not arise until final judgment. In Evans this was in 1960 when allocatur was refused by the Supreme Court. The expenses incurred by Moffat in 1951 and 1952 cannot be isolated and charged to Waschak. They are also a part of the other 25 smog cases. Under the general rule of indemnity reasonable counsel fees and costs are reimbursable. United States Lines Co. v. E. J. Lavino & Co., E.D.Pa.1961, 198 F. Supp. 483. The defense provision is for the benefit of the insurer. It gives it complete control and direction of the defense. While there are some additional advantages to the insured in that he can recover costs and expenses, even though the claim is false or groundless, or even if there is no right to indemnity, it does not take away any of his rights under the indemnity clause. Moffat's indemnification includes. costs and expenses as well as the amount paid the property owners to satisfy the judgments.

## COLLATERAL ESTOPPEL

Metropolitan sets up collateral estoppel as a defense to both the claim for indemnity and the claim for costs and expenses under the duty to defend.

 Collateral estoppel applies to facts actually litigated in a prior suit. It is a doctrine closely related to res judicata, which relates to the final judgment. Here a third party attempts to invoke it defensively. Whether this is proper need not be decided. In the indemnity claim the facts of the smog cases were adopted without change. Therefore, there was no relitigation of facts. And on the claim for failure to defend, collateral estoppel cannot be a defense because there may be an obligation to defend although no obligation to indemnify.

Judgment will be entered for Moffat against Metropolitan for $75,254.07, the costs of defending the smog cases, and for $62,870.40, paid to satisfy the judgments in the smog cases, with interest.