

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-4-2005

# Sikirica v. Nationwide Ins Co

Precedential or Non-Precedential: Precedential

Docket No. 04-2035

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Sikirica v. Nationwide Ins Co" (2005). *2005 Decisions*. Paper 624.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/624

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 04-2035

JEFFREY J. SIKIRICA, ESQ.,
as Trustee of Pittsburgh Beauty
Academy, Inc.

v.

NATIONWIDE INSURANCE COMPANY

Jeffrey J. Sikirica,
Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 02-CV-1283
District Judge: The Honorable Joy F. Conti

_____

Argued January 11, 2005

Before: ROTH and CHERTOFF*, *Circuit Judges*, and
SHAPIRO**, *District Judge*.

(Filed: August 4, 2005)

_____

    * Judge Chertoff heard oral argument in this case but
resigned prior to the time the opinion was filed. The opinion
is filed by a quorum of the panel. 28 U.S.C. § 46(d).

    ** Honorable Norma L. Shapiro, Senior District Judge
for the United States District Court for the Eastern District of
Pennsylvania, sitting by designation.

Marvin Leibowitz, Esq.
Suite 619, Corporate Center
One Bigelow Square
Pittsburgh, PA 15219
        *Counsel for Appellant*

L. John Argento, Esq.
Swartz Campbell, LLC
4750 U.S. Steel Tower
600 Grant Street
Pittsburgh, PA 15219
        *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

SHAPIRO, *District Judge*.

Jeffrey Sikirica, Esq. ("Sikirica"), acting as bankruptcy trustee for the estate of the Pittsburgh Beauty Academy ("PBA"), brought this action against Nationwide Insurance Company ("Nationwide") for bad faith and breach of contract. Nationwide removed the action to federal court, and Sikirica moved for remand to state court. The District Court denied the motion to remand, and granted Nationwide's motion for judgment on the pleadings. Sikirica appeals.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This litigation arose out of a class action in state court against PBA for fraud and consumer protection violations. Nationwide had previously issued PBA an insurance policy ("the Policy") under which Nationwide agreed to indemnify and defend PBA against various legal claims. Nationwide notified PBA that the Policy did not cover PBA for the class action allegations, and Nationwide refused to defend or indemnify PBA. Judgment was entered against PBA in the underlying class action. PBA filed for bankruptcy, and Sikirica, as trustee for PBA, sued Nationwide in state court for breach of contract and bad faith in failing to defend and

2

indemnify PBA. Nationwide removed the action to federal court. The District Court denied Sikirica's motion to remand. Nationwide moved for judgment on the pleadings. The District Court, granting judgment in favor of Nationwide, held the bad faith claim was barred by the statute of limitations, and the policy did not cover intentional and fraudulent conduct. Sikirica now appeals.

The underlying events occurred in 1985, when Victoria Cinski ("Mrs. Cinski") went to PBA to have her hair colored by a PBA student. She signed a release purporting to absolve PBA of all liability in exchange for student-provided services at a reduced price. The Beauty Culture Act, 63 Pa. Cons. Stat. Ann. § 513 (1996), prohibits cosmetology schools from charging more than the cost of materials when students render the services. Mrs. Cinski was charged $9.15, but the cost of the materials was only $7.06. She also suffered serious injuries from the hair coloring.

Mrs. Cinski and her husband filed a state court action against PBA for fraudulent misrepresentation, negligence, personal injury, unjust enrichment, loss of consortium, and violations of the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Cons. Stat. Ann. §§ 201-1 to -9.3 (2005). Her complaint included class action allegations on behalf of all persons overcharged by PBA.

The trial court severed Mrs. Cinski's individual claims from the class action claims. Nationwide defended PBA in the individual action, but denied coverage and defense for the class action in a letter to PBA dated February 22, 1991:

> Please be advised that Nationwide Insurance Company is denying coverage and any further defense cost pertaining to the class action allegations contained in the Complaint filed in the Court of Common Pleas of Allegheny County, Pennsylvania, by Victoria Lynn Cinski and Brian Cinski, her husband, individually and on behalf of others similarly situated, vs. Pittsburgh Beauty Academy, Inc., No. GD87-14137. Our denial of coverage and further

> defense cost pertains only to the class action allegations beginning with Paragraph 55 and extending through Paragraph 61(h).
>
> The class allegations cited would not fall within the insuring agreement for bodily injury or property coverage, nor would it fall within the coverage extended for personal or advertising injury. The insurance does not apply to advertising injury arising out of incorrect description or mistake in advertising of goods, products or services sold, offered for sale, or advertised.
>
> Please be advised that the firm of Reale, Fossee and Ferry will continue to represent Pittsburgh Beauty Academy under the same reservation outlined in our letter of January 9, 1988 for the remaining allegations pertaining to the individual action of Victoria Lynn Cinski.

App. at 111.

The individual action went to trial in 1993. The trial court dismissed Mrs. Cinski's UTPCPL claim, but allowed the personal injury claims to go to trial; she prevailed. On appeal, the Pennsylvania Superior Court reinstated the UTPCPL claim because PBA overcharged Mrs. Cinski and deliberately misled her as to the reduced price. The Superior Court held that, "the trial court should have awarded appellant $100 under the Act for her direct damages from appellee's deliberate misrepresentation," but found no fraud, "as appellant has not shown proof of reliance or fraud, and the misrepresentation is de-minimus [sic]..." *Cinski v. Pittsburgh Beauty Acad., Inc.*, 644 A.2d 802 (Pa. Super. Ct. 1994).

The class action subsequently proceeded to trial on three claims alleging fraudulent misrepresentation, unjust enrichment, and violations of the UTPCPL. A verdict was entered for the class, and the court awarded $100 to each class member with attorneys' fees and costs, a total judgment of approximately $290,000. Sikirica appealed to the

Pennsylvania Superior Court. On March 27, 2001, the Superior Court affirmed because its prior ruling in Mrs. Cinski's individual action, "if not the law of the case, is at least *res judicata* or collateral estoppel as to PBA's issues" in the class action. *Cinski v. Pittsburgh Beauty Acad., Inc.*, 777 A.2d 497 (Pa. Super. Ct. 2001).

On April 26, 2002, Sikirica, as Trustee, initiated a state court action against Nationwide by writ of summons for its failure to defend and indemnify PBA in the class action. The complaint, filed and served on July 8, 2002, set forth six claims. Count I alleged bad faith insurance practices under 42 Pa. Cons. Stat. Ann. § 8371 (1998)[1] for Nationwide's refusal to defend and indemnify PBA. Counts II through VI alleged breach of contract for failure to defend and indemnify under five sections of the Policy: 1) the Comprehensive General Liability section; 2) the Personal Injury and Advertising section; 3) the Professional Liability section; 4) the Contractual Liability section; and 5) the Comprehensive Crime Coverage section.

Nationwide removed to federal court on July 22, 2002. Sikirica, arguing there was no diversity jurisdiction and

---

[1] 42 Pa. Cons. Stat. Ann. § 8371 provides:

In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

5

Nationwide did not timely remove, moved for remand to the state court.  The District Court, ruling that Nationwide timely removed within the 30-day time period for removal that accrued when Sikirica filed the complaint, denied the motion.[2]  Nationwide filed a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c).[3]  The District Court, adopting the magistrate judge's report and recommendation, granted the motion.[4]  The court found the bad faith claim was barred by the statute of limitations.  On the breach of contract claims, the court found Nationwide had no duty to defend because the class action complaint alleged only intentional conduct and the Policy did not cover intentional misconduct.

## II.  JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction over an appeal from a final decision of the District Court under 28 U.S.C. § 1291.  There is subject matter jurisdiction under 28 U.S.C. § 1332.

---

[2]  Sikirica also argued the court lacked diversity jurisdiction.  The District Court rejected the argument, and Sikirica does not raise this issue on appeal.

[3]  Rule 12(c) provides:

**Motion for Judgment on the Pleadings.**  After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

[4]  The District Court applied Pennsylvania law on all substantive issues.  At oral argument, the parties agreed that Pennsylvania law applies.

The standard of review for subject matter jurisdiction is plenary. *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). The party asserting jurisdiction bears the burden of showing the action is properly before the federal court. *Id.* The statute governing removal, 28 U.S.C. § 1441, must be strictly construed against removal. *Id.*

The standard of review for a motion for judgment on the pleadings is plenary. *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290 (3d Cir. 1988). Judgment will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law. *Soc'y Hill Civic Ass'n v. Harris,* 632 F.2d 1045, 1054 (3d Cir. 1980). We must view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Id.*

Interpretation of an insurance policy is a question of law, and review is plenary. *Westport Ins. Corp. v. Bayer*, 284 F.3d 489, 496 (3d Cir. 2002). In construing the policy, if the words of the policy are clear and unambiguous, the court must give them their plain and ordinary meaning. *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760-61 (3d Cir. 1985). When a term is ambiguous, and the intention of the parties cannot be discerned from the policy, the court may look to extrinsic evidence of the purpose of the insurance, its subject matter, the situation of the parties, and the circumstances surrounding the making of the contract. *Id.* at 761. Ambiguous terms must be strictly construed against the insurer, but the policy language must not be tortured to create ambiguities where none exist. *Id.*

## III. DISCUSSION

### A. Sikirica's Motion to Remand for Untimely Removal

Sikirica contends Nationwide did not remove to federal court within 30 days of its receipt of service of process as required by 28 U.S.C. § 1446(b). This argument requires us to determine when the 30-day period for removal began.

Sikirica demanded $300,000 in a letter to Nationwide dated April 5, 2002. The writ of summons informing

Nationwide of the parties' citizenship was served on Nationwide on April 29, 2002. Sikirica argues these two documents together constitute sufficient notice of diversity jurisdiction to trigger the 30-day period upon service of the writ of summons. If so, removal was untimely because Nationwide did not file a petition for removal until July 22, 2002, more than 30 days after the writ of summons was served.

The District Court, relying on *Foster v. Mutual Fire, Marine & Inland Insurance Co.*, 986 F.2d 48 (3d Cir. 1993), held that the letter together with the writ of summons did not constitute notice of diversity jurisdiction. The District Court found Nationwide did not receive notice of diversity jurisdiction until the complaint was filed and served on July 8, 2002. Because the action was removed on July 22, 2002, less than 30 days later, the court held removal was timely and denied Sikirica's motion to remand.

The question is whether the 30-day period under 28 U.S.C. § 1446(b) began when Nationwide received the writ of summons or the complaint. Section 1446(b) contains two paragraphs governing when the 30-day period begins. The first paragraph provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the *initial pleading* setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b) (emphasis added). The second paragraph applies only if the initial pleading does not set forth the grounds for removal:

> *If the case stated by the initial pleading is not removable*, a notice of removal may be filed within

8

> thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

*Id.* (emphasis added).

Sikirica contends the phrase "other paper" in the second paragraph encompasses informal correspondence between the parties, such as the demand letter he sent to Nationwide on April 5, 2002. The complaint stated grounds for diversity jurisdiction, so the second paragraph does not apply if the complaint is the "initial pleading." The "other paper" language of the second paragraph would apply only if the writ of summons could be considered the "initial pleading."

In *Foster*, this court considered the meaning of "initial pleading" in the context of the first paragraph of Section 1446(b). *Foster*, 986 F.2d at 49. The plaintiff in *Foster* filed a praecipe for writ of summons in the Commonwealth Court of Pennsylvania and served the writ of summons on the defendant. *Id.* The complaint was filed and served on the defendant several months later, and the defendant filed a notice of removal within 30 days of receiving the complaint. *Id.* This court held that 28 U.S.C. § 1446(b) "requires defendants to file their Notices of Removal within thirty days after receiving a *writ of summons, praecipe, or complaint* which in themselves provide adequate notice of federal jurisdiction as noted above." *Id.* at 54 (emphasis added). *Foster* also rejected the notion that correspondence, together with the summons, could provide notice because "anything considered a pleading must be something of the type filed with a court." *Id.* The District Court in this case held that under *Foster* the defendant did not have notice until the complaint was received because the writ of summons alone did not establish federal jurisdiction, and Mrs. Cinski's demand letter was not a pleading of the type filed with a

court.

The continuing authority of *Foster* has been placed in doubt by *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). In *Murphy Bros.*, the Supreme Court considered whether a complaint sent by facsimile, but not formally served on the defendant, could provide notice of removability under the first paragraph of 28 U.S.C. § 1446(b). *Id.* at 347-48. The plaintiff argued the 30-day removal period started when the complaint was faxed because the statute provides that the period starts "after the receipt by the defendant, through service *or otherwise*, of a copy of the initial pleading." 28 U.S.C. § 1446(b) (emphasis added). The Court rejected this contention, and held that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service of the summons, but not by mere receipt of the complaint unattended by any formal service." *Murphy Bros.*, 526 U.S. at 347-48. By contrast, *Foster* held the 30-day period begins when the defendant receives "a *writ of summons*, praecipe, or complaint which in themselves" provide notice of federal jurisdiction, *Foster*, 986 F.2d at 54 (emphasis added), whereas the literal wording of *Murphy Bros.* requires the filing or receipt of a *complaint* before the 30-day period begins.

Not all courts have interpreted *Murphy Bros.* to require the filing or receipt of a complaint before the 30-day period begins. *See Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196 (2d Cir. 2001); *Sprague v. ABA*, 166 F. Supp. 2d 206 (E.D. Pa. 2001). In *Whitaker*, a plaintiff in New York state court served the defendants with copies of a summons with notice, but no complaint. He served the complaint more than two months later, and the defendants removed to federal court soon after. *Whitaker*, 261 F.3d at 199. Plaintiff, arguing removal was untimely, moved for remand. *Id.* at 200. The district court concluded removal was timely because *Murphy Bros.* had interpreted the "initial pleading" language of 1446(b) to mean "complaint" and the defendants had removed within 30 days of receipt of the complaint. *Id.*

10

The Court of Appeals for the Second Circuit rejected the district court's interpretation of *Murphy Bros.* *Id.* at 205. The Second Circuit read *Murphy Bros.* solely as an interpretation of the "service or otherwise" language of Section 1446(b), not as an interpretation of "initial pleading." *Id.* at 202. The court stated that *Murphy Bros.* used the term "complaint" in place of "initial pleading" in its analysis of Section 1446(b) merely because the initial pleading served in *Murphy Bros.* was a complaint.[5] *Id.* Looking to the plain language of Section 1446(b), the court reasoned that "initial pleading" does not necessarily mean "complaint," so the statute does not require the receipt of a complaint to trigger the removal period. *Id.* at 203. The court concluded that "a summons with notice may serve as an initial pleading under section 1446(b)." *Id.* at 205. The court then declined to remand the case to state court because the summons did not state the citizenship of the parties, and therefore failed to provide notice of federal diversity jurisdiction; the 30-day period was not actually triggered by receipt of the summons, but receipt of the complaint, so removal was timely. *Id.* at 206.

A summons may not serve as an initial pleading under *Murphy Bros.* First, the Supreme Court's use of the term "complaint" to mean "initial pleading" in *Murphy Bros.* was not merely an inadvertent accommodation of the facts. The Court, addressing the situation where a complaint is received after service of the summons, explicitly held that the time to remove is triggered by "receipt of the complaint, 'through service or otherwise,' *after and apart from service of the summons.* . ." *Murphy Bros.*, 526 U.S. at 348 (emphasis added). If the Court had intended that a summons could be the initial pleading, its holding would not have distinguished between receipt of the complaint and service of the summons.

Second, *Murphy Bros.* cited the legislative history of

---

[5] In quoting Section 1446(b), the Court in *Murphy Bros.* substituted "complaint" for the phrase "initial pleading setting forth the claim for relief upon which such action or proceeding is based." *Murphy Bros.*, 526 U.S. at 347.

Section 1446(b) in which Congress stated its intent to eliminate the situation wherein a defendant who has not received the complaint must decide whether to remove "before he knows what the suit is about." *Id.* at 352. The Second Circuit, noting that New York law requires the summons to state the nature of the action and the relief sought[6], reasoned that a writ of summons satisfies this purpose. *Whitaker*, 261 F.2d at 204. In Pennsylvania, there is generally no such requirement. *See* Pa. R. Civ. P. 1351.[7] The model form for a general writ of summons under Pennsylvania law merely contains the plaintiff's name, the defendant's name, and notice that an action has been commenced, with the county, the date, the name of the prothonotary or clerk, and the deputy. *Id.* This is insufficient to notify the defendant "what the action is about." The writ of summons in this case contained no information about the nature of the action. *See* App. at 241.

Finally, *Murphy Bros.* noted that Congress amended the statute partly to provide for uniform operation across the nation. *Murphy Bros.*, 526 U.S. at 351. We would impede this purpose by adopting the *Whitaker* rule in the Third Circuit, since defendants in Pennsylvania could be required to decide whether to remove without seeing the complaint or knowing the nature of the cause of action, whereas defendants in Delaware and New Jersey would always have such notice.

We therefore hold that *Murphy Bros.* implicitly overruled *Foster*, and a writ of summons alone can no longer

---

[6] "If the complaint is not served with the summons, the summons shall contain or have attached thereto a notice stating the nature of the action and the relief sought, and, except in an action for medical malpractice, the sum of money for which judgment may be taken in case of a default." N.Y. C.P.L.R. § 305(b) (LEXIS through 2005).

[7] This issue does not arise under New Jersey or Delaware law because the complaint must be served with the summons. *See* N.J.Rules 4:4-3 (2005); De.R.Super.Ct.R.C.P. 4(e) (LEXIS through 2005).

12

be the "initial pleading" that triggers the 30-day period for removal under the first paragraph of 28 U.S.C. § 1446(b).[8]

Although *Murphy Bros.* only interpreted the phrase "initial pleading" in the first paragraph, both paragraphs of Section 1446(b) use the phrase "initial pleading," and much of the other language is also identical. Statutes must be construed "as a symmetrical and coherent regulatory scheme, one in which the operative words have a consistent meaning throughout." *Gustafson v. Alloyd Co.*, 513 U.S. 561, 569 (1995). Since the "initial pleading" language is identical, the Supreme Court's interpretation of "initial pleading" to mean "complaint" in the first paragraph of Section 1446(b) must also apply to the second paragraph.

The "initial pleading" here was the complaint, not the summons, but the complaint provided notice of the grounds for federal diversity jurisdiction, so the second paragraph of Section 1446(b) does not apply; Sikirica's reliance on "other papers" is unfounded. Nationwide did not receive notice of federal diversity jurisdiction before the complaint was filed on July 8, 2002. The action was timely removed on July 22, 2002, less than 30 days later; the District Court's denial of the motion to remand was not in error.

## B. Statute of Limitations for Sikirica's Bad Faith Claim

The District Court held Sikirica's claim for bad faith under 42 Pa. Cons. Stat. § 8371 was barred by the statute of limitations. The court applied a two-year limitations period that began to run on February 22, 1991, when Nationwide informed PBA by letter of its refusal to defend and indemnify PBA in the class action. Sikirica contends the limitations period did not accrue until the Pennsylvania Superior Court

---

[8] An en banc panel is not necessary to overrule *Foster*. "It is this court's tradition that a panel may not overrule or disregard a prior panel decision *unless that decision has been overruled by the Supreme Court* or by our own court sitting en banc." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 610-11 (3d Cir. 2002) (emphasis added).

13

denied PBA's appeals on March 27, 2001. The writ of summons for this action issued on April 26, 2002, more than eleven years after Nationwide's initial denial of coverage, but less than two years after the class action judgment against PBA was final.

Section 8371 does not include a limitations period, and the Pennsylvania Supreme Court has not ruled on the issue. Without an opinion from the state's highest court, a federal court must predict how that court would rule. *See Packard v. Provident Nat'l Bank*, 994 F.2d 1039, 1046 (3d Cir. 1993). In doing so, the federal court may consider lower state court precedents to be more predictive than conflicting federal court precedents. *Id.* at 1047.

In *Haugh v. Allstate Insurance Co.*, 322 F.3d 227 (3d Cir. 2003), this court predicted the Pennsylvania Supreme Court would apply the two-year tort statute of limitations in actions under Section 8371, rather than the four-year contract limitations period or the six-year catch-all limitations period of 42 Pa. Cons. Stat. § 5527 (2004), because a bad faith claim sounds in tort. *Haugh*, 322 F.3d at 235-36. A majority of the lower state courts have also ruled that a two-year limitations period applies. *See Ash v. Cont'l Ins. Co.*, 861 A.2d 979, 982 (Pa. Super. Ct. 2004). Although the outcome of this case does not turn on whether the limitations period is two, four or six years, we apply the two-year limitations period as predicted by *Haugh*.

When the statute of limitations begins to run is an issue of first impression.[9] Sikirica contends the refusal to defend and the refusal to indemnify are two independent events in determining the accrual of the statute of limitations in a statutory bad faith claim. Relying on *Moffat v. Metropolitan*

---

[9] The Pennsylvania Supreme Court has not ruled on this. In *Haugh*, this court suggested in *dicta* that the statute accrued when the insured was made aware of the insurer's breach, but the record was factually incomplete, so the court did not decide when the limitations period accrued. *See Haugh*, 322 F.3d at 231-32.

14

*Casualty Insurance Co.*, 238 F. Supp. 165, 175 (M.D. Pa. 1964), Sikirica argues the statute of limitations in an action seeking the cost of defense accrues when the defense has been completed, and a bad faith claim for refusal to indemnify accrues when judgment in the underlying action is final.[10]

The plaintiff in *Moffat* alleged breach of contract, not bad faith. The federal district court in *Moffat* did not have the benefit of state court rulings on this issue, because no bad faith tort claim existed under Pennsylvania law in 1964. *See D'Ambrosio v. Pa. Nat'l Mut. Cas. Ins. Co.,* 431 A.2d 966 (Pa. 1981).

The District Court, rejecting Sikirica's argument, relied on *Adamski v. Allstate Insurance Co.*, 738 A.2d 1033 (Pa. Super. Ct. 1999), in which the Pennsylvania Superior Court held a claim for bad faith under 42 Pa. Cons. Stat. Ann. § 8371 accrued when the insurer first provided definite notice of a refusal to indemnify or defend. *See also Haugh*, 322 F.3d at 235-36; *Simon Wrecking Co. v. AIU Ins. Co.*, 350 F. Supp. 2d 624 (E.D. Pa. 2004) (statute of limitations started running at the point of initial clear denial); *Ash v. Cont'l Ins.Co.*, 861 A.2d 979 (Pa. Super. Ct. 2004) (starting two-year

---

[10]  Sikirica relies on a footnote in *Haugh v. Allstate Insurance Co.* noting decisions from the Tenth and Eleventh Circuits and the Arizona Supreme Court. *Haugh*, 322 F.3d at 231 n.6 (citing *Torrez v. State Farm Mut. Auto. Ins. Co.*, 705 F.2d 1192, 1202 (10th Cir. 1982) (bad faith claim did not accrue until judgment was final); *Boyd Bros. Transp. Co. v. Fireman's Fund Ins. Co.*, 540 F. Supp. 579, 582 (M.D. Ala. 1982) (bad faith claim would not accrue until underlying litigation was concluded), *aff'd*, 729 F.2d 1407 (11th Cir. 1984); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 913 P.2d 1092, 1097 (Ariz. 1996) (bad faith claim for refusal to settle accrues when the underlying judgment becomes final)). *Haugh* did not adopt the holdings of those cases; it merely cited the rule in other jurisdictions. This is a question of Pennsylvania law; those cases are informative, but certainly not binding.

15

limitations period at initial denial of coverage). In general, the statute of limitations begins to run when a right to institute and maintain suit arises. *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000). A bad faith claim arises upon a "frivolous or unfounded refusal to pay proceeds of policy." *Adamski*, 738 A.2d at 1036 (quoting Black's Law Dictionary 139 (9th ed. 1990)). *See also Rottmund v. Cont'l Assurance Co.*, 813 F. Supp 1104, 1108-09 (E.D. Pa. 1992). *Adamski* held the statute accrued when the insurer denied liability because this was when the refusal to pay first occurred. *Adamski*, 738 A.2d at 1042.

In an argument similar to Sikirica's, the plaintiff in *Adamski* had contended the insurer committed numerous separate and distinct acts of bad faith: refusal to defend or indemnify, denial of liability protection without first seeking declaratory judgment, failure to settle, lack of an adequate basis for denying protection, and failure to conduct a diligent investigation. *Id.* at 1037-38. *Adamski* rejected this argument and held that each of these alleged acts was related to the initial denial of coverage, not a separate act of bad faith. *Id.* at 1042. *See also McGrath v. Fed. Ins. Co.*, No. CIV.A. 91-1550, 1991 WL 185247 at *1 (E.D. Pa. Sept. 17, 1991) (alleged continued bad faith acts arise from original denial of coverage); *Wazlawick v. Allstate Ins. Co.*, No. CIV.A.90-3329, 1990 WL 294273 at *1 (E.D. Pa. Sept. 28, 1990) (denial of coverage is not a continuing act of bad faith). We reject Sikirica's argument to the contrary.

Sikirica attempts to distinguish *Adamski* because it required a clear and unequivocal refusal to defend or indemnify, and Nationwide only refused to defend or indemnify PBA against the class action allegations. Nationwide's letter of denial unambiguously informed PBA of its refusal to defend, indemnify or protect it against the class action allegations of the complaint. These claims were clearly delineated in Nationwide's letter as "the class action allegations beginning with Paragraph 55 and extending through Paragraph 61(h)." App. at 111. Nationwide provided clear notice of its denial of coverage and refusal to defend the class action allegations in its letter of February 22, 1991.

16

The writ of summons for this action issued more than two years after Nationwide's letter of denial. Applying the *Adamski* rule, Sikirica's bad faith claim is barred by the two-year statute of limitations.

## C. Sikirica's Breach of Contract Claims

Sikirica alleges a breach of contract arising out of Nationwide's refusal to defend and indemnify PBA. The District Court found the Policy did not cover the intentional conduct alleged in the class action allegations of the complaint. Sikirica argues Nationwide had a duty to defend and indemnify PBA under four sections of the Policy: 1) the Comprehensive General Liability section; 2) the Professional Liability section; 3) the Contractual Liability section; and 4) the Comprehensive Crime Coverage section.[11]

Under Pennsylvania law, an insurer has a duty to defend if the complaint filed by the injured party potentially comes within the policy's coverage. *Pacific Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985). The duty to defend is a distinct obligation, different from and broader than the duty to indemnify. *Erie Ins. Exch. v. Muff*, 851 A.2d 919, 925 (Pa. Super. Ct. 2004); *Atl. Mut. Ins. Co. v. Brotech Corp.*, 857 F. Supp. 423 (E.D. Pa. 1994), *aff'd*, 60 F.3d 813 (3d Cir. 1995). Because the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend. *See Mut. Benefit Ins. Co. v. Haver*, 725 A.2d 743, 746 n.1 (Pa. 1999); *Erie Ins. Exch. v. Claypoole*, 673 A.2d 348, 356 n.3 (Pa. Super. Ct. 1996). After determining the scope of coverage under a policy, the court must examine the complaint in the underlying action to determine whether it triggers coverage. *Gen. Accident Ins. Co. of Am. v. Allen,* 692 A.2d 1089, 1095 (Pa. 1997). If the complaint avers facts that might support recovery under the policy, coverage is triggered and the insurer has a duty to defend. *Id.* Both the duty to defend and the duty to indemnify "flow from a determination

_____

[11] Sikirica does not appeal the District Court's adverse ruling on the claim for breach of contract under the Personal Injury and Advertising section of the Policy.

17

that the complaint triggers coverage." *Id.*

### 1. The Comprehensive General Liability Section

Sikirica alleges Nationwide had a duty to defend and indemnify PBA under the Comprehensive General Liability section of the policy. This section states, in relevant part:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
>> A. bodily injury or
>>
>> B. property damage
>
> to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages. . .

The term "occurrence" is defined under the Policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The term "accident" does not include intentional acts by the insured. *See M. Schnoll & Son, Inc. v. Standard Accident Ins. Co.*, 154 A.2d 431 (Pa. Super. Ct. 1959) (defining "accident" when the term is not defined in the policy).

Sikirica argues the misconduct for which PBA was held liable was not intentional, but negligent, and hence covered as an "occurrence" or "accident." He contends the underlying complaint alleged negligent misrepresentation because the Superior Court found that PBA was not liable for fraud or intentional conduct. The Superior Court's finding that there was no fraud was not based on lack of intent. The court made no finding of negligent misrepresentation. To the contrary, the court stated the pricing misrepresentation by PBA was "deliberate." Its finding there was no fraud was based on lack of reliance and the negligible extent of the misrepresentation.

Sikirica points to no allegations or facts in the complaint

that aver accidental or negligent conduct. Sikirica argues a claim under Section 201-2(4)(xi)[12] of the UTPCPL is "analogous to the tort of negligent misrepresentation." He cites *Westport Insurance Corp. v. Bayer*, 284 F.3d 489 (3d Cir. 2002) (lawyer negligently endorsed a *Ponzi* scheme), but it did not involve a claim under the UTPCPL. The additional cases Sikirica cites from other states or circuits do not interpret the UTPCPL.

Sikirica cites *Delucido v. Terminix*, 676 A.2d 1237, 1240-41 (Pa. Super. Ct. 1996), in arguing that the UTPCPL creates liability for misleading statements even in the absence of intentional fraud. In *Delucido*, the Pennsylvania Superior Court noted that the UTPCPL "encompasses an array of practices which might be analogized to passing off, misappropriation, trademark infringement, disparagement, false advertising, fraud, breach of contract, and breach of warranty." *Delucido*, 676 A.2d at 1240 (quoting *Gabriel v. O'Hara,* 534 A.2d 488, 494 (Pa. Super. Ct. 1987)). The court did not compare any claim under UTPCPL to negligent misrepresentation or interpret Section 201-2(4)(xi).

The relevant sections of the class action complaint aver the following violations of the UTPCPL:

28. The unlawful method, act or practice was:

a. engaging in fraudulent conduct which creates a likelihood of confusion or misunderstanding in that the defendant both stated and implied that it had a right to charge for the services of students when it did not.

b. Making false or misleading statements of fact concerning the reasons for existence or amounts of

---

[12] Section 201-2(4) of the UTPCPL defines twenty-one different acts comprising "unfair methods of competition" or "unfair or deceptive acts or practices." Section 201-2(4)(xi) prohibits "[m]aking false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions."

19

price reductions. The defendant stated falsely and mislead the plaintiff by saying that the reason for the price reduction was that students were to be used and lawfully compensated when it was not.

These claims aver false, fraudulent, or misleading conduct, but not negligence or accidental conduct.

Several factual allegations in the complaint also demonstrate the plaintiffs were not alleging negligent misrepresentation on behalf of the class. For example, Paragraph 4 avers, "Defendant knew that it is illegal to charge for the services of students except for a reasonable cost of materials." Count I alleges "fraudulent misrepresentation," averring in paragraph 18 that "defendant school of cosmetology knew that it was not permitted to make a charge for the services of students" and "defendant knew that the reason given for the discount was likely to cause confusion."

Considering the complaint's numerous factual allegations and claims of intentional fraud, none of the class action claims can be construed as averring negligent or unintentional conduct. The alleged conduct could not be an "accident" or "occurrence"; Nationwide had no duty to defend or indemnify PBA under the Comprehensive General Liability section.

## 2. The Professional Liability Section

Sikirica alleges breach of contract for Nationwide's refusal to defend or indemnify PBA under the Professional Liability section of the Policy. This section obligates Nationwide:

> To pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of BODILY INJURY SUSTAINED BY ANY PERSON, and INJURY TO OR DESTRUCTION OF PROPERTY CAUSED BY ACCIDENT, arising out of the hazards hereinafter defined.

This provision only covers bodily injury and damage to

property "caused by accident." The class action allegations of the complaint do not allege bodily injury. The class action complaint does not allege PBA's damage to property was accidental; Nationwide had no duty to defend or indemnify PBA under this section of the Policy.[13]

### 3. The Contractual Liability Section

Sikirica alleges breach of contract for Nationwide's refusal to defend or indemnify PBA under the Contractual Liability section of the Policy. This section modifies an exclusion provision in the Comprehensive General Liability section of the policy. The Comprehensive General Liability section creates coverage for an "occurrence" or "accident," but an exclusion provision states, in relevant part:

This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract. . .

The Contractual Liability provision states, in relevant part:

The definition of incidental contract [in the Comprehensive General Liability section] is extended to include any oral or written contract or agreement relating to the conduct of the named insured's business.

The Contractual Liability provision broadens the definition of "incidental contract" as used in the exception to the exclusion provision, but it does not extend coverage of the Policy to injury or damages that are not the result of an "occurrence" or "accident." Because the complaint does not allege any conduct that would be covered as an "occurrence" or "accident," Nationwide had no duty to defend or indemnify PBA under this section of the Policy.

### 4. The Comprehensive Crime Coverage

_____

[13] Nationwide did defend PBA against Mrs. Cinski's personal injury claim.

21

**Endorsement Section**

Sikirica alleges breach of contract for Nationwide's refusal to defend or indemnify PBA under the Comprehensive Crime Coverage Endorsement section of the Policy. Sikirica contends Nationwide had a duty to defend under the "Loss Inside the Premises Coverage" provision of this section that covers:

> Loss of Money and Securities by the actual destruction, disappearance or wrongful abstraction thereof within the Premises or within any Banking Premises or similar recognized places of safe deposit.

> Loss of (a) other property by Safe Burglary or Robbery within the Premises or attempt thereat, and (b) a locked cash drawer, cash box, or cash register by felonious entry into such container within the Premises or attempt thereat or by felonious abstraction of such container from with the Premises or attempt thereat.

> Damage to the Premises by such Safe Burglary, Robbery or felonious abstraction, or by following burglarious entry into the Premises or attempt threat [sic], provided with respect to damage to the Premises the insured is the owner thereof or is liable for such damages.

Sikirica claims "wrongful abstraction" includes the overcharges for which PBA was sued, and that the overcharges occurred "within the Premises." The resultant losses were suffered by PBA patrons, not PBA, but Sikirica contends that no language in this provision explicitly limits coverage to losses suffered by PBA.

The introductory clause to this section states that the insurer agrees "to pay the insured for" the losses defined in the subsequent provisions, implying the insured is covered for its own losses, not losses it causes third parties. Other provisions in the same section also state or imply that third party losses are not covered. The "Loss Outside the Premises

22

Coverage" provision provides coverage for:

> Loss of Money and Securities by the actual destruction, disappearance or wrong abstraction thereof outside the Premises while being conveyed by a Messenger or any armored motor vehicle company, or while within the living quarters in the home of any Messenger.

> Loss of other property by Robbery or attempt thereat outside the Premises while being conveyed by a Messenger or any armored motor vehicle company, or by theft within the living quarters in the home of any Messenger.

This provision covers PBA for the loss of its own assets only.

Sikirica argues that PBA must be indemnified for intentionally overcharging its own customers, in violation of Pennsylvania's public policy prohibiting insurance coverage for intentional torts or criminal acts. *See Agora Syndicate, Inc. v. Levin*, 977 F. Supp. 713, 716 (E.D. Pa. 1997) (citing *State Farm Mut. Auto. Ins. Co. v. Martin*, 660 A.2d 66, 68 (Pa. Super. Ct. 1995)). The Comprehensive Crime Coverage Endorsement section should not be construed to provide PBA coverage for overcharging its own customers.

The complaint's class action allegations do not claim PBA suffered any loss from overcharging its customers. To the contrary, the complaint alleges PBA was unjustly enriched as the result of its illegal practices. The class action complaint alleges no conduct covered by this or any other section of the Policy; Nationwide had no duty to defend or indemnify PBA.

## IV. CONCLUSION

For the reasons above, the District Court did not err in denying Sikirica's motion to remand and granting Nationwide's motion for judgment on the pleadings. The judgment is affirmed.