NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2462
_____

NAVIGATORS SPECIALTY INSURANCE COMPANY,
                                                                        Appellant

v.

INVENTIV HEALTH CLINICAL, INC., f/k/a PHARMANET DEVELOPMENT
GROUP, INC.; INVENTIV CLINICAL, LLC, f/k/a PHARMANET, LLC

v.

LANDMARK AMERICAN INSURANCE COMPANY
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-15-cv-06285)
District Judge: Honorable Peter G. Sheridan
_____

Submitted under Third Circuit L.A.R. 34.1(a)
July 1, 2020
_____

Before: GREENAWAY, JR., SHWARTZ, and RENDELL, *Circuit Judges*.

(Opinion Filed: September 8, 2020)
_____

OPINION[*]
_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Despite its contentions to the contrary, Plaintiff-Appellant Navigators Specialty Insurance Company ("Navigators") had a duty to defend Defendants-Appellees inVentiv Health Clinical, Inc. and inVentiv Clinical, LLC, f/k/a PharmaNet Development Group, Inc. and PharmaNet, LLC (collectively "PharmaNet") in an underlying arbitration dispute (the "Underlying Arbitration") based on the terms of a professional services liability policy PharmaNet had purchased from Navigators. For the reasons provided below, we will affirm the District Court's Order entered on June 18, 2019.[1]

## I. FACTUAL AND PROCEDURAL BACKGROUND

There are three key aspects to this appeal: (1) the insurance policy (the "Policy") purchased by PharmaNet from Navigators, (2) the claims made by CEL-SCI Corporation ("CEL-SCI") against PharmaNet in the Underlying Arbitration,[2] and (3) Navigators's assertion, after a professional malpractice claim was dismissed from the Underlying

---

[1] The District Court's Order, dated June 17, 2019 and entered on June 18, 2019, CM/ECF No. 105, made final the District Court's prior: (1) Memorandum and Order entered on March 29, 2016 ("March 29 Order") denying Navigators's Motion for Judgment on the Pleadings and granting PharmaNet's Motion for Partial Summary Judgment on Navigators's duty to defend PharmaNet in the Underlying Arbitration, *see* CM/ECF No. 29, (2) Order entered on March 1, 2017 ("March 1 Order") granting PharmaNet's Motion to Enforce Judgment, *see* CM/ECF No. 69, and (3) Opinion on insurance disbursement entered on February 22, 2017 ("February 22 Opinion"), *see* CM/ECF No. 72. Navigators thus appeals from the March 29 Order, the March 1 Order, and the February 22 Opinion, all of which were finalized by the Order entered on June 18, 2019. *See* J.A. 1.

[2] We note at the outset that this case contains partially sealed briefs and records, so as to protect arbitration-related materials. *See* Appellate Dkt. No. 29. To the extent we must discuss the claims in the Underlying Arbitration, we will do so in generalized terms.

Arbitration, that the remaining claims were barred by an exclusion provision in the Policy.

First, PharmaNet purchased a Life Sciences Products-Completed Operations and Professional Services Liability Coverage Policy (*i.e.*, the Policy) from Navigators. The Policy provides, in part, "B. Professional Services Coverage," which reads:

> Subject to paragraph C. below, [Navigators] will pay all amounts in excess of the deductible up to the limit of liability that [PharmaNet] becomes legally obligated to pay as **damages** as a result of a covered **professional liability claim** by reason of a **wrongful act** by [PharmaNet] or by someone for whom [PharmaNet] is liable.

> In addition, [Navigators] will pay all claim expenses in excess of the deductible and up to the limit of liability. Claim expenses are included within and erode both the limits of liability and the deductible.

Sealed J.A. 326 (certain emphasis omitted); *see also* J.A. 19–20.[3] The Policy also contains, in part, an exclusion for "Performance Delay," which states that "Coverage A and B [*i.e.*, Professional Services Coverage] do not apply to any claim . . . based on or arising out of delay in delivery of or failure to complete your product or your work[.]" Sealed J.A. 331 (emphasis omitted); *see also* Redacted Appellant's Br. 9.

Second, PharmaNet was hired by CEL-SCI as a professional contract research

---

[3] A "[p]rofessional liability claim," is that which "alleg[es] a wrongful act in the rendering or failure to render professional services." Sealed J.A. 340 (emphasis omitted); *see also* Redacted Appellant Br. 8. A "[w]rongful act" is "any actual or alleged negligent act, error or omission in the rendering of professional services by any Insured on your behalf." Sealed J.A. 341 (emphasis omitted); *see also* Redacted Appellant Br. 8. "Professional services" includes that which is set forth in the "Professional Services Endorsement," which includes work as a contract research organization. Sealed J.A. 340, 364; *see also* Redacted Appellant Br. 8.

organization to aid with the management and administration of a clinical trial. CEL-SCI initiated the Underlying Arbitration against PharmaNet alleging breach of contract, fraud in the inducement, and common law fraud, and seeking damages, in part, for failures and delays. In an amended statement of claim, CEL-SCI added a claim for professional malpractice, however, this claim was ultimately dismissed by the arbitrator as duplicative of the breach of contract claim found in the original statement of claim.

Third, while Navigators initially agreed to defend PharmaNet in the Underlying Arbitration, after the professional malpractice claim was dismissed, Navigators disclaimed coverage. Navigators argued that the remaining claims were based on delays, which fell under the Policy's exclusion provision.

Navigators then filed a complaint in the District Court for declaratory relief, "seek[ing] a declaration that it has no duty to defend or indemnify PharmaNet in" the Underlying Arbitration based on the Policy's delay exclusion. Sealed J.A. 45. After PharmaNet filed an answer and counterclaim, and Navigators filed a motion for judgment on the pleadings, which PharmaNet opposed, cross-moving for partial summary judgment, the District Court granted PharmaNet's motion for partial summary judgment on the duty to defend issue and denied Navigators's motion for judgment on the pleadings.[4] Once the District Court entered partial final judgment certifying that "the

---

[4] Additionally, after the District Court's March 29 Order, PharmaNet filed a motion to enforce judgment, which was granted and discussed in the March 1 Order and the February 22 Opinion, and finalized in the June 18, 2019 Order. Navigators's appellate briefing is concerned only with whether, as a matter of law, it had a duty to defend or whether the exclusion applied. *See generally* Redacted Appellant Br. 21–22.

4

parties' claims regarding Navigators' duty to defend [PharmaNet] in the underlying arbitration have been fully and finally adjudicated on the merits by way of the following Orders[,]" J.A. 3–4, Navigators filed a timely notice of appeal.[5]

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to § 1291. We review both a district court's grant of summary judgment ruling and its denial of judgment on the pleadings de novo. *See, e.g.*, *Dwyer v. Cappell*, 762 F.3d 275, 279 (3d Cir. 2014); *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 219 (3d Cir. 2005). A grant of summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dwyer*, 762 F.3d at 279 (quoting Fed. R. Civ. P. 56(a)). A motion for judgment on the pleadings "will not be granted unless the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica*, 416 F.3d at 220. "Interpretation of an insurance policy is a question of law," which we review de novo. *Id.*

## III. ANALYSIS

The District Court was correct in finding that, as a matter of law, Navigators had a duty to defend PharmaNet in the Underlying Arbitration, as at least some of CEL-SCI's damages claims were predicated on performance failures, existing separate and apart

---

[5] Though Landmark American Insurance Company appears on the case caption, the company was dismissed as a defendant from this case on May 2, 2019. *See* CM/ECF No. 103.

5

from delays, such that the Policy's delay exclusion did not exempt Navigators from its duty to defend (*i.e.*, there were allegations made by CEL-SCI that were covered and not excluded by the Policy).

As the District Court noted, "New Jersey law controls in this case," J.A. 9, and under New Jersey law, an insurance company has a duty to defend when an underlying complaint against the insured "states a claim constituting a risk insured against." *Voorhees v. Preferred Mut. Ins. Co.*, 607 A.2d 1255, 1259 (N.J. 1992) (citation omitted). The duty to defend is "determined by comparing the allegations in the complaint with the language of the policy . . . [and it] arises, irrespective of the claim's actual merit. If the complaint is ambiguous, doubts should be resolved in favor of the insured and thus in favor of coverage." *Id.* (internal citation omitted); *see also Abouzaid v. Mansard Gardens Assocs., LLC*, 23 A.3d 338, 346 (N.J. 2011) ("As a practical matter, the determination of an insurer's duty to defend requires review of the complaint with liberality to ascertain whether the insurer will be obligated to indemnify the insured if the allegations are sustained" (citation and internal quotation marks omitted)). If a complaint contains multiple alternative causes of action, "the duty to defend will continue until every covered claim is eliminated." *Voorhees*, 607 A.2d at 1259; *see also Hofing v. CNA Ins. Cos.*, 588 A.2d 864, 867–68 (N.J. Super. Ct. App. Div. 1991) ("If the pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend regardless of the insured's ultimate liability to the complainant. . . . The nature of the damage claim . . . determines whether the insurer is obliged to defend.").

Here, in the Underlying Arbitration, CEL-SCI's statement of claim and amended

6

statement of claim contained multiple allegations. Though Navigators believes the allegations of failures alleged by CEL-SCI "were inseparable from PharmaNet's delays and its ultimate failure to complete," Redacted Appellant Br. 11, we disagree. The delays and failures alleged by CEL-SCI are not all inexorably intertwined, indeed, there are instances where CEL-SCI alleged failures by PharmaNet that appear to exist separate and apart from allegations of delays and the failure to complete. *See, e.g.*, *Voorhees*, 607 A.2d at 1259 (resolving ambiguities and doubts in a complaint in favor of the insured). As such, the claims made by CEL-SCI can be read as including references to both delays and failures that exist separately from one another. *See, e.g.*, Sealed J.A. 140–141 ¶¶ 15-16, 155 ¶ 68, 218 § IX, 237 ¶ 369, 248 ¶ 416; *but see, e.g.*, Sealed 254 ¶ 434. Further, though one of CEL-SCI's claims was dismissed—a claim for professional malpractice—it was noted as being essentially duplicative of allegations that remained. *See* Sealed J.A. 451. Thus, having considered the underlying allegations by CEL-SCI, and finding that there were claims related to performance failures, existing separate and apart from the delays—*i.e.*, not just existing as but-for causation for the delays, *see, e.g.*, *Robert W. Hayman, Inc. v. Acme Carriers, Inc.*, 696 A.2d 1125, 1127–29 (N.J. Super. Ct. App. Div. 1997)—we turn to the Policy itself to see if any claims are covered.

The Policy provides coverage for "wrongful act[s]," Sealed J.A. 326 (emphasis omitted), defined as "actual or alleged negligent act[s], error[s] or omission[s] in the rendering of professional services," Sealed J.A. 341 (emphasis omitted), *i.e.*, services performed by PharmaNet in its role as a contract research organization. *See* Sealed J.A. 340, 364. This language is plain and unambiguous. *See Voorhees*, 607 A.2d at 1260.

7

The Policy also includes an exclusion barring coverage for professional liability claims due to wrongful acts "based on or arising out of delay in delivery of or failure to complete your product or your work[.]" Sealed J.A. 331 (emphasis omitted). This exclusion is likewise clear, exempting Navigators from having to provide coverage for wrongful acts "based on or arising out of" PharmaNet's potential delays or failure to complete. *Id.*; *see also Princeton Ins. Co. v. Chunmuang*, 698 A.2d 9, 17 (N.J. 1997) (explaining that exclusions are also "given effect if specific, plain, clear, prominent, and not contrary to public policy" (citation and internal quotation marks omitted)).

Navigators thus argues that this delay exclusion exempts it from defending PharmaNet in the Underlying Arbitration because the underlying claims were based on or arose out of a delay or failure to complete. Though "[t]he phrase 'arising out of' has been defined broadly in other insurance coverage decisions to mean conduct 'originating from,' 'growing out of' or having a 'substantial nexus' with the activity for which coverage is provided," *Princeton Ins. Co.*, 698 A.2d at 16 (citation omitted), "exclusions must be narrowly construed," and "the burden is on the insurer to bring the case within the exclusion," *id.* at 16–17. *See also S.T. Hudson Eng'rs, Inc. v. Pa. Nat. Mut. Cas. Co.*, 909 A.2d 1156, 1163 (N.J. Super. Ct. App. Div. 2006) (noting that the burden is on the insured to show a claim falls under a policy). Here, it is evident that at least some of CEL-SCI's claims are related to PharmaNet's alleged delays. *See* J.A. 10 (referencing and providing examples of CEL-SCI's claims that detail alleged delays). Indeed, there are instances where CEL-SCI's claims could reasonably be read as suggesting delays arising from PharmaNet's mismanagement. *See, e.g.*, Sealed J.A. 249 ¶ 418, 251 ¶ 424,

8

252 ¶ 429, 254 ¶ 434.  However, there are also claims that purely allege failures to perform tasks as required by the contract.  *See, e.g.*, Sealed J.A. 252 ¶¶ 427, 428, 253 ¶¶ 430, 431.

Thus, given the ambiguities in the complaint—namely, whether CEL-SCI sought damages due solely to delays, for delays caused by wrongful acts, or for both wrongful acts and delays—it was correct of the District Court pursuant to New Jersey law to read the complaint liberally in favor of PharmaNet.  *See* J.A. 11–12 (citing the Amended Statement of Claim, ¶ 416, which mentions "delays *and* failures" (emphasis added)); *see also Abouzaid*, 23 A.3d at 346; *Voorhees*, 607 A.2d at 1259.

CEL-SCI's allegations and claims include, at the very least, both claims of delays and claims of failures, which can be read independently at times.  *See, e.g.*, *Salem Grp. v. Oliver*, 607 A.2d 138, 140 (N.J. 1992) (holding that when a complaint can be read as alleging concurrent causation, the insurer "must honor its duty to defend"). Thus, while the Policy contained a valid exclusion, *Princeton Ins.*, 698 A.2d at 17, there were underlying claims that did not fall into the Policy's exclusion and remain covered under the Policy, *Voorhees*, 607 A.2d at 1259, such that Navigators had a duty to defend.[6]

## IV.    CONCLUSION

For the reasons set forth above, we will affirm the Order entered by the District Court on June 18, 2019, which finalized two prior orders and one oral decision, from

---

[6] Having found that Navigators had a duty to defend, we need not reach the question of whether the Policy's exclusion was illusory.  *See, e.g.*, Redacted Appellant Br. 41.

March 29, 2016, March 1, 2017, and February 22, 2017.