**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2891
_____

MARTIN LUTHER ROGERS,
Appellant

v.

NEW JERSEY DEPARTMENT OF CORRECTIONS;
RUTGERS UNIVERSITY BEHAVIORIAL & CORRECTIONAL HEALTHCARE;
ROBERT BUECHELE; WILLIE BONDS; J. CISROW (S-126);
J. KUHLEN (S-104); E. VELEZ; K. CASTRO, SCO; CHARLES SCHEMELIA;
STEPHANIE WATERS; MARTEL HUNTER; C. RALPH, DHO;
MONICA TSAKIRIS, APN; CHRISTOPHER SIMKINS, APN, MSN;
LISA RENEE MILLS, RN NP; LAURIE VALENTINO, RN;
JOHN DOE 1-10; UNIVERSITY OF MEDICINE AND DENTISTRY (UMDNJ);
SOOY; A. HERNANDEZ; COWIN, SCO; HEADLEY, SCO; GONZALEZ, SCO;
PLATT, SCO; RAHEIM SUMMERS; RONI J. FELDMAN, APRN;
JUDITH BENDER, MSN APN-C; TINA MONTGOMERY, LPN
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1:15-cv-07005)
District Judge:  Honorable Renée M. Bumb
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 16, 2022
Before:  RESTREPO, PHIPPS and RENDELL, Circuit Judges

(Opinion Filed: September 28, 2022)

OPINION*

PER CURIAM

Pro se appellant Martin Luther Rogers appeals the District Court's orders granting motions for summary judgment and judgment on the pleadings to two groups of defendants[1] on federal civil rights claims, declining to exercise supplemental jurisdiction over state law claims, and dismissing claims against unserved defendants with prejudice. For the following reasons, we will affirm.

In September 2015, Rogers filed a lawsuit alleging violations of his civil rights while he was a prisoner at South Woods State and Northern State Prisons. Relative to this appeal, Rogers alleged violations under federal and state laws stemming from a January 2015 housing transfer within South Woods State whereby certain defendants delayed providing him a ground-floor cell even though he previously had a medical

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] Rogers named as defendants Rutgers University Behavioral and Correctional Health Care, Laurie Valentino, Christopher Simkins, Tina Montgomery, Rutgers University of Medicine and Dentistry, and Roni J. Feldman (collectively, "the Medical Defendants"); he also sued the New Jersey Department of Corrections and its officials Robert Buechele, Willie Bonds, J. Cisrow, John Kuhlen, Edwin Velez, Kristen Castro, Charles Schemelia, Stephanie Waters, Martel Hunter, Danielle Sooy, Andres Hernandez, William Cowin, Edwin Headley, Rigoberto Gonzalez, and Casey Platt (collectively, "the NJDOC Defendants") in his lawsuit. He also named Monica Tsakiris, Lisa Renee Mills, and Judith Bender but he never properly served them.

2

housing restriction. He also alleged an incident of excessive force and retaliation. The District Court granted *in forma pauperis* status, dismissed some claims pursuant to 28 U.S.C. § 1915(e)(2)(B), and allowed some claims to proceed.

After discovery, Rogers filed an amended complaint in March 2018 containing 25 counts, alleging violations of his civil rights under the First Amendment, Eighth Amendment, Title II of the Americans with Disabilities Act, and "relevant State Law," and seeking damages and declaratory and injunctive relief. See ECF Nos. 81-3 & 135. In November 2019, both the NJDOC and Medical Defendants moved for summary judgment (NJDOC's motion also sought judgment on the pleadings for some claims), which Rogers, who had obtained counsel, opposed. The District Court granted the motions on March 19, 2021.[2] It also ordered Rogers to show cause within 14 days why he had not served the amended complaint on the unserved defendants, and cautioned that, in the absence of good cause, it would dismiss the claims against those defendants and decline to exercise supplemental jurisdiction over the state law claims. See ECF No. 207. Rogers responded, but the District Court did not find good cause demonstrated, and it dismissed the claims without prejudice and ordered Rogers to show cause why the claims should not be dismissed for failure to prosecute. See ECF No. 215. After Rogers did not respond, the Court entered an Opinion and Order on September 16, 2021, dismissing the

---

[2] The District Court granted summary judgment to the Medical Defendants in an opinion and order at ECF Nos. 205, 206 (sealed and redacted versions of the opinion, respectively) and 207. It granted summary judgment and judgment on the pleadings to

3

claims against unserved defendants with prejudice. See ECF Nos. 216, 217. Rogers filed this timely appeal.

We have jurisdiction under 28 U.S.C. § 1291. We exercise plenary review to assess whether the District Court appropriately awarded summary judgment and judgment on the pleadings. See State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C., 566 F.3d 86, 89 (3d Cir. 2009); Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219-20 (3d Cir. 2005). Summary judgment will be awarded "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment on the pleadings also requires a showing of no material issues of fact and entitlement to judgment as a matter of law. Sikirica, 416 F.3d at 220. We consider the District Court's dismissal with prejudice for lack of prosecution for an abuse of discretion. See Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992). We may affirm the District Court's judgment on any basis supported by the record. See Murray v. Bledsoe, 650 F.3d 246, 247 (3d Cir. 2011) (per curiam).

Rogers raises several challenges on appeal with respect to his substantive civil rights claims and the dismissal of claims against unserved defendants. Applying the above-cited standards, we conclude that none of these arguments has merit.

---

the NJDOC Defendants in an opinion and order at ECF Nos. 203 and 204.

### A. Eighth Amendment Excessive Force Claim (Count 18)

Rogers was assaulted by a fellow inmate who entered his unlocked cell on January 16, 2015. The inmate punched Rogers in the face and continued to punch, kick, and knee Rogers after he fell to the ground. NJDOC officers found Rogers on the floor of his cell, handcuffed him, and took him to a holding cell where a nurse treated his injuries. Rogers told the nurse the handcuffs were too tight, and, when the nurse asked the officers to remove the handcuffs, they did. The tight handcuffs caused a scrape with a small amount of bleeding. After Rogers received medical treatment, the officers returned to the holding cell and put Rogers in handcuffs (not as tightly as before) and ankle-cuffs and left him alone for three hours. That evening, the officers took Rogers to a ground-floor, Temporary Close Custody ("TCC") cell and removed his restraints.

After careful analysis, the District Court ruled that NJDOC Defendants were entitled to qualified immunity on this claim. See ECF No. 203 at 36. The District Court decided that the initial handcuffing, which resulted in Rogers' scraped wrist, did not suggest excessive force, see id. at 32-33, and that, in any event, the NJDOC Defendants were entitled to qualified immunity on the excessive force claim because they were "not on notice that leaving Plaintiff hand and ankle-cuffed alone in a holding cell for three hours, shortly after his involvement in a violent altercation with another inmate, violated the Eighth Amendment." Id. at 36.

5

When assessing Eighth Amendment excessive-force claims, we determine whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 7 (1992). In an analysis of an excessive force claim, we consider "the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of the injury inflicted." Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015) (internal quotation marks omitted). In considering whether qualified immunity applies, we assess whether an officer has violated a constitutional right and whether the right was "clearly established, such that it would have been clear to a reasonable officer that his conduct was unlawful." Lamont v. New Jersey, 637 F.3d 177, 182 (3d Cir. 2011) (cleaned up).

We agree with the District Court's analysis at pages 32-36 of its opinion at ECF No. 203. On appeal, Rogers argues that the District Court incorrectly applied the law for Eighth Amendment excessive force and qualified immunity claims articulated in Young and Hope v. Pelzer, 536 U.S. 730 (2002). We find no error in its reasoning. Rogers also contends that the District Court made a factual error in its qualified immunity ruling that "precedent does not clearly establish that handcuffing under these circumstances violates the Eighth Amendment." Appellant's Br. at 10 (quoting ECF No. 203 at 35). But as the District Court pointed out, the extreme conditions found in Hope and Young were not present here, and Rogers' argument that a violation should have been "obvious" does not

6

make it so. We discern no error where Rogers did not establish that officers "maliciously and sadistically" used force under the circumstances or point to any cases indicating that his circumstances were tantamount to a constitutional violation. Cf. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (explaining that plaintiff seeking to defeat qualified immunity must cite "existing precedent" putting "the . . . question beyond debate").

### B. Eighth Amendment Deliberate Indifference Claims against NJDOC Defendants Cisrow, Velez, and Schemelia (Counts 16 and 17)

Prison officials moved Rogers to a separate housing unit on January 10, 2015, in connection with his application and acceptance into the NJ-STEP program. Rogers previously had a ground-floor housing medical restriction in place due to a back problem, and he ascertained through the transfer that his medical restriction for ground-floor housing had expired. On January 13 or 14, Rogers requested renewal of his medical restriction, and it was renewed. Rogers asked to be moved to the ground floor. Officers Cisrow and Velez told him that they would move him after completing the transfer of all the inmates assigned to the NJ-STEP unit. Rogers remained in the second-floor cell for two more days, until an inmate attacked him on January 16, and officers transferred him to a ground-floor TCC cell. Rogers was released from the TCC on January 27, and Officer Schemelia directed Rogers to report to an assigned second-floor cell. Rogers told him about the ground-floor restriction, but Schemelia did not see a medical restriction for Rogers. As a result, Rogers was not moved to a ground-floor cell until two days later and

7

during that time had to use the stairs, which limited his access to the phones, dining hall, and recreation area.

Rogers claimed that Cisrow, Velez, and Schemelia were deliberately indifferent to his serious medical need in violation of the Eighth Amendment. On summary judgment, the District Court concluded that there was no evidence that Cisrow and Velez were on notice that, if there was a delay in Rogers' transfer, he would be harmed. See ECF No. 203 at 37. In addition to finding the Cisrow and Velez were not deliberately indifferent to a serious medical need, the District Court likewise decided that they were entitled to qualified immunity because no clearly established law put them on notice that their conduct violated the Eighth Amendment. Id. at 37-38. As for Officer Schemelia, the District Court ruled that Rogers had failed to state an Eighth Amendment claim because Schemelia's disbelief of Rogers' claim to a medical restriction, when he did not see a medical restriction indicated, did not establish an intentional refusal to provide a known need for medical treatment, an intentional delay for a non-medical reason, or a deliberate interference with a needed medical treatment. ECF No. 203 at 19-20.

To establish a deliberate indifference claim, a plaintiff must demonstrate (1) a serious medical need, and (2) acts or omissions by prison officials indicating deliberate indifference to that need. Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003). The deliberate indifference prong of the Eighth Amendment test requires that a defendant actually know of and disregard "an excessive risk to inmate health or safety."

8

Farmer v. Brennan, 511 U.S. 825, 837 (1994). We agree with the District Court that Rogers' claims against Cisrow, Velez, and Schemelia did not meet this standard. On appeal, Rogers argues that, to establish deliberate indifference by Cisrow and Velez, he only had to show that he told them about the medical restriction. Appellant's Br. at 11. But that misstates the standard. Deliberate indifference required that Cisrow and Velez actually knew of an "excessive" risk to his health in the absence of the immediate transfer and that they drew an inference that a "substantial risk of serious harm" existed. Farmer, 511 U.S. at 837. After discovery, the evidence did not support that proposition.[3] Further, we agree that Rogers failed to state a deliberate indifference claim against Schemelia from the interaction on January 27, especially considering that the officer said he did not see the restriction in the records available and, after an investigation, Rogers was actually moved to the ground floor on January 29. See ECF No. 203 at 20.

---

[3] On this point, Rogers did not claim that officials denied or ignored the request for a ground-floor cell; rather, they told Rogers that they needed to finish moving NJ-STEP participants and he would be moved as soon as feasible. Rogers testified that he understood that to mean they would do it "any day now." ECF No. 172-3 at 70-71. He continued: "[y]ou know, [Velez] just basically said that we can't make a move right now until everyone's moved over." Id. at 120-121. Absent from the evidence in the record on this claim is any indication that Cisrow and Velez had been on notice and apprehended a "severe" risk which they knew they should act on, or that Rogers expressed or acted on any concerns at the time that the officers were not acting appropriately in relation to the risk. See Farmer, 511 U.S. at 838 (stating that "an official's failure to alleviate a significant risk that he should have perceived but did not . . . cannot under our cases be condemned as the infliction of punishment").

9

In his brief, Rogers analogizes his situation to the facts in Muhammad v. Department of Corrections, 645 F. Supp. 2d 299 (D. N.J. 2008), but that case is distinguishable. There, the District Court found a sufficiently serious five-month deprivation where prison officials transferred an amputee to a top bunk on the second floor and denied a transfer despite the obvious medical restriction. See id. at 318. In Rogers' case, although it is regrettable that Rogers had to suffer pain in his leg and back from climbing stairs during the two to three days that he remained on the second floor after renewing his restriction, the situation does not compare to that in Muhammad. We agree with the District Court that no clearly established law put Cisrow and Velez on notice that their conduct was constitutionally violative, and that they were entitled to qualified immunity. See ECF No. 203 at 37-38.[4]

---

[4] On appeal, Rogers mentions his ADA claims against the NJDOC Defendants and deliberate indifference and ADA claims against the Medical Defendants only in the most general of terms. See Appellant's Br. at 12. He makes no arguments on these particular issues and identifies no specific errors in the District Court's opinions and orders granting summary judgment on these issues. See generally, ECF No. 203 at 38-44, ECF No. 207 at 12-28; 36-39. We hold Rogers' pro se brief to a less stringent standard than pleadings drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972). Regardless of pro se status, however, a party waives any issues not raised and discussed in his opening brief, and Rogers has forfeited argument with respect to the issues that he did not address in his opening brief. See M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020). To the extent that Appellees argued in their briefs that Rogers chose particular issues on appeal and had waived others, we note that Rogers did not file a Reply brief and did not contest these positions.

**C.     First Amendment Retaliation Claims (Counts 19 and 22)**

With respect to count 19, Rogers alleged that, after he was released from the TCC on January 27, 2015, Officer Waters verbally harassed him on several occasions.[5] He filed two grievances addressing those incidents, but he never received responses. He claimed that Waters transferred him to a new housing unit in February 2015 because he had filed the grievances, and that this affected his employment. With respect to various other named NJDOC defendants in count 22, Rogers maintained in his amended complaint that those officials retaliated against him because of a previously filed lawsuit against a corrections officer. The District Court granted summary judgment to Waters on count 19 and judgment on the pleadings to the named NJDOC defendants on count 22.

We agree with the District Court's conclusions. See ECF No. 203 at 25-27 and 22-23. In order to establish his claims, Rogers needed to show that: (1) he engaged in conduct protected by the First Amendment; (2) "he suffered an adverse action at the hands of prison officials;" and (3) "his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him." Watson v. Rozum, 834 F.3d 417, 422 (3d Cir. 2016). Both of Rogers' claims came up short on the last factor.

---

[5] He alleged that Waters: asked in front of other inmates what had happened to his face (this was after the January 16 attack) and told him that he needed to learn how to fight; commented that he could walk around naked if he wanted to when he moved to an empty cell; told him he was limited to one cup of liquid at a time at breakfast and threatened to write him up when he disagreed; and claimed that he had too many things in his cell and instructed him to place his belongings in his locker.

While a plaintiff may rely on circumstantial evidence to show a retaliatory motive, <u>see</u> <u>id.</u>, Rogers still did not establish for purposes of summary judgment that his move to a new housing unit was prompted by Waters. In fact, Rogers testified that the Warden, not Waters, ordered the transfer, and there were other indicators of that fact in his deposition. ECF No. 172-3 at 138-139; <u>see</u> <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988) (stating that defendant in § 1983 action must have personal involvement in alleged wrong).[6]

As for count 22, Rogers argues on appeal that he alleged additional facts in his amended complaint to create a reasonable inference that the named NJDOC defendants were aware of a previous lawsuit that he filed. Appellant's Br. at 9-10. However, the additional facts cited by Rogers referred to officers who are not parties to this action. No logical connection may be made or inferred between any of the actions by the named NJDOC defendants and the fact that unrelated non-party prison officials knew about a previously filed, unrelated lawsuit against another non-party to this case.

---

[6] Rogers later contended in his counseled summary judgment opposition that this deposition quotation was an error and that he had said "Waters" and not "Warden." However, the District Court did not abuse its discretion in declining to accept that representation over three years after the deposition was taken and where he was long ago given the opportunity to correct it.

**D.      Dismissal of Claims Against Unserved Defendants**

Lastly, Rogers challenges the dismissal with prejudice of all claims against three unserved defendants.  Mills and Tsakiris had been first named in Rogers' 2015 complaint; they and Bender were named in his 2018 amended complaint.  In March 2021, the District Court ordered Rogers to show cause why he had not served the amended complaint on Mills, Tsakiris, and Bender.  Rogers responded, in part, that it had been an oversight.  In rejecting Rogers' reasons, the District Court noted that the error with respect to Mills and Tsakiris was addressed only after the court had granted summary judgment on all federal claims to all defendants who had been served as of March 2021.  ECF No. 215 at 5.  The Court also detailed the assistance it had provided in Rogers' unsuccessful efforts to serve Bender.  Id.  It accordingly found no good cause to extend the Federal Rule of Civil Procedure (4)(m) deadline and dismissed the claims without prejudice.[7]  Further, the District Court ordered Rogers to show cause why the claims should not be dismissed with prejudice under Rule 41 for failure to prosecute.  After Rogers did not respond, the District Court entered an Opinion and Order on September 17, 2021, dismissing the claims with prejudice for failure to prosecute after weighing the

---

[7] Under Federal Rule of Civil Procedure 4(m), where a defendant has not been served within 90 days after a complaint has been filed, a district court "must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."

factors of <u>Poulis v. State Farm Fire & Casualty Co.</u>, 747 F.2d 863 (3d Cir. 1984).[8] <u>See</u> ECF Nos. 216, 217.

We have considered the District Court's dismissal here for an abuse of discretion, and find none, <u>see</u> <u>Mindek</u>, 964 F.2d at 1373. We do wish to address Rogers' recent concern about his failure to receive notice of the July 2021 show cause order. Rogers points out that he had notified the Clerk in April 2021 that he was no longer represented by counsel, and that he filed a change of address in May 2021 (ECF No. 213) after being released from prison. There is nothing in the docket indicating where the Clerk sent the July 12 order. We do note that a copy of the District Court's subsequent order in September 2021 was sent to Rogers at his Northern State Prison address and was returned to the Clerk. <u>See</u> ECF No. 218.

To the extent that Rogers missed the chance to address the <u>Poulis</u> factors in the District Court, we are satisfied that he was not prejudiced. While there is no "magic formula or mechanical calculation" in assessing a dismissal, <u>see</u> <u>Briscoe v. Klaus</u>, 538 F.3d 252, 263 (3d Cir. 2008) (internal quotation marks omitted), the result of the <u>Poulis</u> factors would remain virtually unchanged here. Rogers does not indicate that he has been able to locate the unserved defendants, and those defendants remain prejudiced by the

---

[8] A district court must balance: "(1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim."

14

failure to receive notice of the claims long after the expiration of the statute of limitations and many years after the alleged misconduct. See Adams v. Trustees of N.J. Brewery Employees' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994). The District Court did not find any dilatoriness or willfulness, so that is the same. Further, considering that summary judgment and judgment on the pleadings were granted to all served defendants who had like claims asserted against them, the meritoriousness factor does not weigh in Rogers' favor. Nor is there an alternative sanction that would be fair to the unserved defendants at this point. Accordingly, we conclude that the District Court did not abuse its discretion by dismissing the claims against all unserved defendants for failure to prosecute.

For these reasons, we will affirm the judgment of the District Court.

---

Poulis, 747 F.2d at 868 (emphasis omitted).